IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AARON NELSON; ABIGAEL ROANN B. RANADA; ADRIANNE VAKAUTA; ALICIA OKUMURA; ALISSA PACARRO TUUMALO; ALVIN REINAUER; AMANDA LOPEZ; ANDREW DIAGO; ANDREW WOLCOTT; ANGELA IRIS REICH; ARIELLE CASSADY; ASHLYNNE QUINSAAT; BARBARA JEAN VIDINHA RICHARDS; BRENT BARGAMENTO; BRIAHNI' MARIE ATISANOE; BRIDGET TULLY; BRIDGETT ZINCHUK; BRITTANY K. REGO-RODRIGUES; BROOKS FUJIHARA,JR.; BRYAN DAGUIO; CANDACE KRISTINE VIZCARRA (GUTIERREZ); CARLA ESTIAMBA; CAROL LAMSE; CHACY R. EVELAND III; CHAD MAKAIAU; CHARELLE BEDFORD; CHELSEA MIHM; CHELSEA TEHANE WILLIAMS; CHRISTINA OLIVE; CHRISTINE GOTO; CHRISTMASEDNA STARKS (TUIFAGU); CHRISTOPHER BARBOZA; CHRISTOPHER KAM; CINDY BURT; COLLEEN GOTO; DANIELLE OLVERA; DARIN K. MATSUNO; DAVID FISCHER; DAVID KURIHARA; DEBORAH STALCUP; DEREK ICHIYAMA; DIANE VENTIMIGLIA; DINA ANGELES; DOMINIQUE RANDAZZO; DORI YAMADA; DOROTHY TAPPY-HIGA; ELISA THURMAN-BEY; ELIZA KAHAWAII; ELIZABETH BACHRAN; ELIZABETH CHAPTON; ELIZABETH STOUDT; ERIK BARTON; FELISHALYN MILLER; GEOFFREY HANSON; GERALD W. SAN CLEMENTE; HEATHER LAFI; HEIDI CALA; HELEN Y. SALVANI; JACQUELINE ANN LOVIN-YAP; JAMES CABODOL, JR.; JAMES EVERTS; JANICE KIM; JASON AKINA; JEFFREY P. ARANYOS; JENA ZARRO; JODI YOKOYAMA; JODY GOYA; JOHN PREGIL, JR.; JON KATAHARA; JONATHAN OPIE; JOVAN LAFONTAINE; JOY GARY; KARLA L. DIAS WONG; KATHLEEN M. SWEET; | CIV. NO. 23-00603 HG-WRP |

1

KAWAHINEHAAHEO KEOLANUI;          )
KEALAONALEHUA R. SOUZA;           )
KEHAUNANI MITSUKO KELIINOI        )
REIS; KEKAIKAHE'ELANI OLIVER;     )
KELLEE SMITH; KEOKI EDWIN K.      )
LIFTEE-KAU; KIANNA CHUN;          )
KIMBERLY TUZON; KRISTA ALVAREZ;   )
LANI PRIMACIO; LEIHAAHEO DIAS;    )
LEILANI M. SOON; LILINOE          )
KAHALEPAUOLE-BUSTAMANTE; LINDA    )
V. AU; LORI SEBASTIAN; LYLE       )
PURUGGANAN; MAILE HERNANDEZ;      )
MAILE M. HUSSEY; MARC             )
NISHIMURA; MARIANNE MATA; MEDA    )
J. WASHBURN TAKETA; MEGAN         )
SKWIERCZYNSKI; MEGUMI KEAN;       )
MEHANA SALVANI; MICHAEL           )
ANDERSON; MICHAEL RYAN; MICHELE   )
TANABE; MICHELLE NOLTIE;          )
MIKIALA AKAU; MISTY CARVER;       )
MITCHELLE CARINO; MONICA D.       )
SMITH; MORIAH GOSNEY; NALEISHA    )
LUCRISIA; NICOLE HENRY; NICOLE    )
WIEDEMANN; PATRICIA CASTRO;       )
PENELOPE GEBAUER; PHILLIP         )
ROTHER; PONO ROBACK; PULELEHUA    )
KNIGHT; RAELYNN BROAD-KELA;       )
RANETTE BAUTISTA; RONIN BURKE;    )
SARAH PARKER; SATCHADANANDA       )
SLADE; SCOTT FONG, JR.; SETEMA    )
SAGAPOLUTELE; SHANNON JACKSON;    )
SIONA TEJADA; STEPHEN             )
DANGERFIELD; TATIANA JOHNSON;     )
TAUARII NAHALEA-MARAMA; TERRI     )
MEDEIROS; TERRY YAMADA GILLEN;    )
THECLA TAYLOR; THEODORA AUWAE;    )
TORI DAGUIO; TRACI MILLER-        )
TRUONG; TRACIE RYAN; TRACY        )
SNOOPS; TRAVIS SMITH; UTUMOE      )
PADILLA; WAINANI YOUNG; WINNIE    )
MENDIOLA; ZARINA KAMA,            )
              Plaintiffs,         )
                                  )
         vs.                      )
                                  )
HAWAIIAN AIRLINES, INC.;          )
HAWAIIAN HOLDINGS, INC.,          )
                                  )
              Defendants.         )
_____ )

2

**ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION AS TO CERTAIN PILOTS (ECF No. 104)**

Plaintiffs Michael Anderson, Heidi Cala, Chacy R. Eveland III, David Fischer, Geoffrey Hanson, Jon Katahara, Aaron Nelson, Philip Rother, Michael Ryan, and Alvin Reinauer ("Pilot Plaintiffs") were employed as pilots by Defendant Hawaiian Airlines, Inc. prior to the COVID-19 global pandemic.  Each of the ten Pilot Plaintiffs was certified to fly Airbus A330 aircraft and either flew international routes or were placed in the reserve pool for the A330 flights.

In August 2021, Defendants Hawaiian Airlines, Inc. and Hawaiian Holdings, Inc. ("Hawaiian Defendants") implemented a mandatory vaccination policy for COVID-19.

The ten Pilot Plaintiffs requested to be exempt from the Hawaiian Defendants' COVID-19 vaccination policy based on religious or medical grounds.  The Hawaiian Defendants denied the Pilot Plaintiffs' requests for exemption from the vaccination policy.

The ten Pilot Plaintiffs, along with 130 other individuals, have filed suit against the Hawaiian Defendants.  The ten Pilot Plaintiffs have brought two separate types of failure-to-accommodate claims:

Nine of the Pilot Plaintiffs have brought failure-to-accommodate religion claims, arguing that the Hawaiian Defendants failed to reasonably accommodate their religious beliefs in

3

violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

One of the Pilot Plaintiffs, Philip Rother, brought a failure-to-accommodate disability claim, arguing the Hawaiian Defendants failed to reasonably accommodate his disability in violation of the Americans With Disabilities Act of 1990 ("ADA").

The Hawaiian Defendants filed a Motion for Partial Dismissal based on lack of subject-matter jurisdiction as to the Pilot Plaintiffs' failure-to-accommodate claims under both Title VII and the ADA.  The Hawaiian Defendants assert that the ten Pilot Plaintiffs' failure-to-accommodate claims require interpretation of the Collective Bargaining Agreement that was in effect at the time the pilots sought exemption from the vaccination policy.

The Court may not review the Pilot Plaintiffs' claims due to the jurisdictional limitations set forth in the Railway Labor Act, 45 U.S.C. §§ 181-188 ("RLA").  The RLA requires claims that involve interpretation of collective bargaining agreements for transportation workers to be resolved only through the RLA's internal dispute-resolution processes.  See 45 U.S.C. § 184.

Defendants' Motion for Partial Dismissal for Lack of Subject-Matter Jurisdiction as to the Pilot Plaintiffs: Michael Anderson, Heidi Cala, Chacy R. Eveland III, David Fischer, Geoffrey Hanson, Jon Katahara, Aaron Nelson, Philip Rother, Michael Ryan, and Alvin Reinauer (ECF No. 104) is **GRANTED.**

4

## PROCEDURAL HISTORY

On December 15, 2023, 162 separate Plaintiffs filed the Complaint.  (ECF No. 1).

On April 3, 2024, Plaintiffs filed a First Amended Complaint.  (ECF No. 23).

On July 19, 2024, the Hawaiian Airlines Defendants filed a Motion to Partially Dismiss First Amended Complaint.  (ECF No. 44).

On October 25, 2024, the Court issued an ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND.  (ECF No. 52).

On December 16, 2024, Plaintiffs filed the Second Amended Complaint.  (ECF No. 64).

On September 23, 2025, the Court approved the Parties' JOINT STIPULATION OF DISMISSAL AS TO CRYSTAL K.E. ALLEN, URSULA BARTON, TRACY BEAN, JOHN P.K. BOURGEOIS, JOSEPH CASSADY, KELLIE LUKE, CYNDI R. MAYO-AKEO, MILA PALENCIA, KORY PUTT, JOY SATELE, AYUMI SIEVERTS, JENNIFER SHIMATSU, NANETTE SILVA, SHANA M. STALCUP, KANANI TABURA, DWAYNE TUZON, WILLIAM K. YOKOYAMA, KELLY YOUNG. (ECF No. 91).  Eighteen Plaintiffs were dismissed pursuant to the Joint Stipulation leaving 144 remaining Plaintiffs.  (Id.)

On September 25, 2025, the Court approved the Parties' Joint Stipulation Regarding Third Amended Complaint.  (ECF No. 93).

On September 26, 2025, the 144 remaining Plaintiffs filed the THIRD AMENDED COMPLAINT.  (ECF No. 95).

5

On October 10, 2025, Defendants filed Motion for Partial Dismissal for Lack of Jurisdiction As to Certain Pilots (ECF No. 104).

On March 13, 2026, Plaintiffs filed their Opposition to the Motion for Partial Dismissal as to Certain Pilots.  (ECF No. 146).

On April 1, 2026, Defendants filed their Reply to the Motion for Partial Dismissal as to Certain Pilots.  (ECF No. 150).

On May 20, 2026, the Court granted the Parties' JOINT STIPULATION OF DISMISSAL AS TO PLAINTIFFS SEAN K. RODRIGUES, MERRIBETH IONA, DEAN M. SATO, AND JOSIAH BURBAGE.  (ECF No. 241).

The Court elects to decide the Defendants' Motion for Partial Dismissal as to Certain Pilots without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

## **BACKGROUND**

### **Defendant Hawaiian Airlines, Inc.'s Operation**

At the time of the announcement of the vaccination policy in August 2021, all of Defendant Hawaiian Airlines, Inc.'s passenger flights operated within or to and from the Hawaiian Islands. There were three different types of scheduled passenger service:

    (1)  Inter-island flights within the Hawaiian Islands;

    (2)  Domestic flights to and from the Hawaiian Islands to the United States Mainland; and

    (3)  International flights to and from the Hawaiian Islands to numerous foreign locations including Japan, Australia, South Korea, French Polynesia,

along with to and from the overseas U.S. territory of American Samoa.[1]

The airline operated various aircraft including the Airbus 330, the Boeing 767, the Airbus 321, and the Boeing 717. (CBA at Section 20 § 20-1, ¶ 3, ECF No. 104-9; Declaration of Justin Doane attached to Def.'s Reply at ¶ 10, ECF No. 150-3).

## The Pilot Plaintiffs' Collective Bargaining Agreement

The ten Pilot Plaintiffs subject to this Motion (Plaintiffs Michael Anderson, Heidi Cala, Chacy R. Eveland III, David Fischer, Geoffrey Hanson, Jon Katahara, Aaron Nelson, Philip Rother, Michael Ryan, and Alvin Reinauer) ("Pilot Plaintiffs") were pilots for Defendant Hawaiian Airlines, Inc. (Declaration of Colin Beard, at ¶¶ 3-5, ECF No. 104-3). All ten were subject to a Collective Bargaining Agreement entitled:

> "Agreement Between Hawaiian Airlines, Inc. and the Airline Pilots in Service of Hawaiian Airlines, Inc. as Represented by the Airline Pilots Association, International 2017 Pilots Agreement."

(CBA attached as Ex. 1 to Def.'s Motion, ECF No. 104-9).

---

[1] Collective Bargaining Agreement ("CBA") at e.g., §1-23 ¶¶ 7-8, 10; at §2-7 ¶¶ FF, GG, HH, II, JJ, KK, CCC; §4-2C.1-3, attached as Ex. 1 to Def.'s Motion, ECF No. 104-9; Declaration of Kathleen Mainerd, Senior Manager, Defendants' South Pacific Airport Operations ("Mainerd Decl.") at ¶ 3, attached to Def.'s Motion, ECF No. 104-5; Declaration of Ryan D. Thomas, Senior Manager, Defendants' Labor Initiatives for Airport Operations ("Thomas Decl.") at ¶¶ 3, 5, 7, attached to Def.'s Motion, ECF No. 104-6; Declaration of Jon Snook, Chief Operations Officer for Def. Hawaiian Airlines, Inc. ("Snook Decl."), at ¶¶ 6-7, attached to Def.'s Motion, ECF No. 104-8; Declaration of Justin Doane, Vice President of Labor Relations for Hawaiian Airlines, Inc., at ¶ 19, ("Doane Decl."), ECF No. 104-2.

The Collective Bargaining Agreement is commonly referred to as the "CBA."  It was in effect from April 1, 2017 through July 1, 2022.  (Id.)

The Collective Bargaining Agreement or "CBA" governed the working relationship between pilots and the Hawaiian Defendants. (Doane Decl. at ¶ 5, ECF No. 104-2).  The CBA sets forth the terms and conditions of the pilots' employment, including seniority, assignments, and scheduling.  (Id. at ¶¶ 8-11).

According to Defendants' Vice President for Labor Relations, Justin Doane, seniority is a key factor in the airline industry and the Pilots' flight schedules were determined through a seniority-based bidding system created by the CBA.  (Id. at ¶¶ 9-11).

Under the CBA, pilots are classified as "bid" or "reserve" pilots.  (Id. at ¶ 12).  Each month, "bid pilots" request a set schedule for the month.  Bid pilots indicate their preferences with respect to specific routes, destinations, and days off. (Id. at ¶ 13).  The most senior pilot is awarded his first choice and the next most senior will receive his request based on what is remaining and so on.  (Id.)

In contrast to a "bid pilot," a "reserve pilot" does not request a set schedule each month but instead is required to maintain a means of contact with crew scheduling and is on-call for flight assignments.  (Id. at ¶ 15).

In addition, there is an Open Trip Scheduling List where

8

both bid pilots and reserve pilots are scheduled to work flights in various groupings.  (Id. at ¶¶ 16-17; CBA at Section 22 at § 22-8 on "Scheduling Policy," ECF No. 104-9).  The scheduling and assignment process is complex.  For example, pilots on the Open Trip Scheduling List are assigned flights in order of nine separate priorities that involve various factors including seniority.  (Id.)

The seniority and bidding provisions of the CBA cover the Hawaiian pilots' work assignments and awarding of bid routes, scheduling of pilots on "runs" (including locations, dates, duration, and layovers), and aircraft types.[2]  Seniority and bidding procedures also affect work conditions, tasks, pay rates, and compensation.[3]

The Collective Bargaining Agreement contains a provision mandating that any disputes concerning interpretation or application of any of the terms of the CBA be resolved through arbitration by the System Board of Adjustment whose decision is final and binding on the parties as provided by the Railway Labor Act, 45 U.S.C. § 151 et seq.  (Doane Decl. at ¶ 7, ECF No. 104-2; CBA at Section 17, Ex. 1 to Def.'s Motion, ECF No. 104-9).

---

[2](Doane Decl at ¶ 11, ECF No. 104-2; CBA at Section 18 on "Seniority," Section 20 on "Filling Of Vacancies," Section 21 on "Preparation, Bidding, & Awarding Of Runs," Section 22 on "Scheduling Policy, attached as Ex. 1 to Def.'s Motion, ECF No. 104-9).

[3](CBA at Section 3 on "Compensation," and Section 10 on "Hours of Service," attached as Ex. 1 to Def.'s Motion, ECF No. 104-9).

**The Hawaiian Defendants' Vaccination Policy**

According to the Third Amended Complaint, on August 9, 2021, in the midst of the worldwide COVID-19 pandemic, the Hawaiian Defendants announced a vaccination policy.  (Third Amended Complaint at ¶ 37, ECF No. 95).  Plaintiffs allege that the Hawaiian Defendants required all of their U.S.-based employees to receive a COVID-19 vaccine or receive approval for exemptions based on religious or medical reasons.  (Id. at ¶ 48).

The Third Amended Complaint asserts that on September 17, 2021, the Hawaiian Defendants published the vaccination policy and required proof of vaccination by January 30, 2022.  (Id. at ¶ 39).

The Hawaiian Defendants' employees were permitted to submit requests for accommodations to the vaccination policy based on their religious beliefs or disabilities.  (Declaration of Robin Kobayashi, Senior Vice President of Human Resources at Defendant Hawaiian Airlines, Inc., ("Kobayashi Decl.") at ¶ 4, attached to Def.'s Motion, ECF No. 104-7).

A total of 71 unvaccinated pilots submitted accommodation requests to Defendants' vaccination policy.  (Declaration of Willard Jackson, Senior Director of Leave Management for Defendant Hawaiian Airlines, Inc. ("Jackson Decl.") at ¶ 4, attached to Def.'s Motion, ECF No. 104-4).

All ten of the Pilot Plaintiffs flew for Hawaiian Airlines during January 2019 through December 2021.  (Declaration of Colin

10

Beard, Director Crew Planning for Hawaiian Airlines, Inc., at ¶ 4, attached to Def.'s Motion, ECF No. 104-3).  Each of the Plaintiff Pilots was qualified to fly the Airbus A330 aircraft and flew international routes on the A330 and/or were on reserve for the A330 aircraft.  (Id. at ¶ 5).

According to the Third Amended Complaint, each of the Pilot Plaintiffs submitted a request for accommodation to be exempt from the vaccine mandate.

Nine of the Plaintiff Pilots (Michael Anderson, Heidi Cala, Chacy R. Eveland III, David Fischer, Geoffrey Hanson, Jon Katahara, Aaron Nelson, Michael Ryan, and Alvin Reinauer) sought exemption for a religious reason.

One of the pilots, Philip Rother, sought exemption for a medical reason.

The ten Pilot Plaintiffs' requests for exemption were denied by the Hawaiian Defendants.  (Third Amended Complaint at ¶¶ 127, 135, 159, 191, 194, 198, 210, 217, 236, 238, ECF No. 95).

**The Pilot Plaintiffs' Cause of Action**

On September 26, 2025, the ten Pilot Plaintiffs filed the Third Amended Complaint, along with more than one hundred other Plaintiffs, against the Hawaiian Defendants.  (Third Amended Complaint, ECF No. 95).

The Third Amended Complaint contains the following causes of action:

11

|            |                                                                                                                                                                          |
|------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| **COUNT I:**   | Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for **Religious Discrimination** Based On **Failure-To-Accommodate**                  |
| **COUNT II:**  | Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for **Religious Discrimination** Based On **Disparate Treatment**                     |
| **COUNT III:** | Violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq., for **Disability Discrimination** Based On **Disparate Treatment** and **Failure-To-Accommodate** |
| **COUNT IV:**  | Violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq., for **Disability Discrimination** Based On **Perceived Disability**                          |

**The Hawaiian Defendants' Motion For Partial Dismissal Pursuant To the Railway Labor Act As To Ten Pilot Plaintiffs**

The Hawaiian Defendants have filed this Motion for Partial Dismissal as to the ten Pilot Plaintiffs' failure-to-accommodate claims in Count I as to religious discrimination and Count III as to disability discrimination for lack of subject-matter jurisdiction.

The Hawaiian Defendants' Motion argues that the Court lacks subject-matter jurisdiction to review the Pilot Plaintiffs' claims in Count I and Count III.  Defendants argue the failure-to-accommodate causes of action are precluded from court jurisdiction pursuant to the Railroad Labor Act, 45 U.S.C. § 151, et seq.

12

## <u>STANDARD OF REVIEW</u>

A plaintiff has the burden of proving that subject-matter jurisdiction exists. <u>Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979). The Court must dismiss any claims for which it lacks subject-matter jurisdiction. <u>See</u> Fed. R. Civ. P. 12(b)(1); <u>Leeson v. Transamerica Disability Income Plan</u>, 671 F.3d 969, 975 (9th Cir. 2012).

A challenge to the Court's subject-matter jurisdiction may be "facial or factual." <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the party challenging jurisdiction argues that the allegations contained in a complaint are insufficient "on their face" to invoke federal jurisdiction. <u>Id.</u> A facial challenge therefore mirrors a traditional motion to dismiss analysis. The Court must take all allegations contained in the pleading "to be true and draw all reasonable inferences in [its] favor." <u>Wolfe v. Strankman</u>, 392 F.3d 358, 362 (9th Cir. 2004).

In a factual attack, the party challenging jurisdiction argues that the facts in the case, notwithstanding the allegations in the Complaint, divest the Court of subject-matter jurisdiction. <u>See</u> <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000). No presumptive truthfulness attaches to the Complaint's allegations. <u>Id.</u> The party challenging jurisdiction presents "affidavits or other evidence properly brought before the court"

indicating that subject-matter jurisdiction is lacking. Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). The burden then shifts to "the party opposing the motion [to] furnish affidavits or other evidence to satisfy its burden of establishing subject matter jurisdiction." Id. Failure to present suitable evidence establishing subject-matter jurisdiction necessitates dismissal. Moore v. Maricopa Cnty. Sheriff's Office, 657 F.3d 890, 895 (9th Cir. 2011).

A motion challenging the district court's jurisdiction pursuant to the Railway Labor Act is properly considered as a motion bringing a factual attack on subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Soper v. United Airlines, Inc., 2024 WL 4800082, *2 (C.D. Cal. Sept. 4, 2024).

The Court may review the Collective Bargaining Agreement and other relevant evidence to determine whether it has subject-matter jurisdiction pursuant to the Railway Labor Act. Hinant v. American Airlines, Inc., 2024 WL 4988391, *3 (D. Ariz. Dec. 5, 2024).

## ANALYSIS

### I.    The Railway Labor Act

The Railway Labor Act ("RLA"), 45 U.S.C. § 151, et seq., was enacted to provide a comprehensive framework for resolving labor disputes involving transportation carriers.

In 1936, the Railway Labor Act was extended to cover the

14

airline industry.  Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 248 (1994); see 45 U.S.C. § 181.

The RLA addresses three kinds of labor disputes:

(1)  major disputes;

(2)  minor disputes; and

(3)  representation disputes.

Haralson v. United Airlines, Inc., 224 F.Supp.3d 928, 934 (N.D. Cal. 2016).

First, "major disputes" relate to the formation of collective bargaining agreements or the efforts of the parties to secure rights under the collective bargaining process.  Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 302 (1989).  Major disputes look to the acquisition of rights for the future, and they do not involve disputes about rights that were already secured in existing contracts.  Id.  Major disputes require the parties to undergo lengthy bargaining, mediation, and arbitration processes.  Id.

Second, "minor disputes" seek to enforce existing contractual rights as embodied in an existing collective bargaining agreement.  Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters, 779 F.3d 1069, 1081 (9th Cir. 2015) (en banc). Minor disputes require the existence of a collective bargaining agreement already in effect and involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation."  Elgin, J. & E. Ry. Co. v. Burley,

325 U.S. 711, 723 (1945).

The RLA mandates that minor disputes are subject to an exclusive dispute resolution mechanism for the prompt and orderly settlement of such claims.  Norris, 512 U.S. at 252.

A distinguishing feature of a minor dispute from a major dispute is that a minor dispute requires interpretation of an existing collective bargaining agreement whereas a major dispute challenges an attempt to form or secure collective bargaining rights.  Id. at 265.  Courts lack subject-matter jurisdiction to adjudicate minor disputes concerning an existing collective bargaining agreement.  Id.

Third, the RLA also covers "representation disputes" which concern the definition of a particular bargaining unit and selection of the employee representative for collective bargaining.  Herrera v. Command Sec. Corp., 837 F.3d 979, 989 (9th Cir. 2016).  Representation disputes are within the exclusive jurisdiction of the National Mediation Board and courts also lack jurisdiction over such claims.  Id.

## II.  Courts Lack Subject-Matter Jurisdiction To Review Minor Disputes Pursuant To The Railway Labor Act

Minor disputes about the contractual rights set forth in an existing collective bargaining agreement between an employee and a transportation carrier must be resolved through the RLA's non-judicial, procedural mechanisms rather than through a lawsuit. See 45 U.S.C. § 184.  Courts lack subject-matter jurisdiction

16

over minor disputes within the meaning of the RLA.  <u>Norris</u>, 512
U.S. at 253.

> ### A.    There Is A Two-Step Test To Discern If A Dispute Over A Collective Bargaining Agreement Is Precluded From Court Jurisdiction

Courts in the Ninth Circuit apply a two-step test to
evaluate if a plaintiff's claim is preempted or precluded from
court review by the RLA.  <u>Columbia Exp. Terminal, LLC v. Int'l
Longshore & Warehouse Union</u>, 23 F.4th 836, 841-42 (9th Cir.
2022).

<u>First</u>, the court examines if the plaintiff's claim seeks
purely to vindicate a right or duty created by the collective
bargaining agreement itself.  <u>Id.</u> at 843.  If so, the claim is
preempted or precluded from review.  If not, the court proceeds
to the second step.

<u>Second</u>, even when the claim does not seek to vindicate a
right created by the CBA, the court must evaluate if the
plaintiff's claim is substantially dependant on analysis and
interpretation of the CBA.  <u>Id.</u>  If the claim does require
analysis and interpretation of the CBA, the claim is preempted or
precluded from review.

> ### B.    Claims That Require Interpretation Of An Existing Collective Bargaining Agreement Are Precluded From Court Review Under The RLA

Under step two, a court is without subject-matter

jurisdiction to review a plaintiff's claim that concerns interpretation of the "duties and rights created or defined by the collective bargaining agreement." Alaska Airlines, Inc. v. Schurke, 898 F.3d 904, 919 (9th Cir. 2018) (en banc) (quoting Norris, 512 U.S. at 258). Such disputes must be resolved only through the RLA mechanisms, and not by a court. Id.

The RLA exclusivity provision was enacted to ensure that disputes regarding existing collective bargaining agreements are governed by a uniform set of principles rather than conflicting substantive interpretations under competing legal systems in the federal and state courts. Schurke, 898 F.3d at 919.

**C.    Disputes That Do Not Require Interpretation Of the
       Existing Collective Bargaining Agreement Are Not
       Preempted Or Precluded From Court Review**

Consultation of the collective bargaining agreement alone is insufficient to trigger application of the RLA. Livadas v. Bradshaw, 512 U.S. 107, 124 (1994). In order to qualify as a minor dispute pursuant to the RLA, the dispute must require interpretation of the terms of a collective bargaining agreement. Norris, 512 U.S. at 265.

The court is not divested of jurisdiction pursuant to the RLA if there is no disagreement as to the meaning of all of the terms of the collective bargaining agreement. Schurke, 898 F.3d at 927. "Reliance on and reference to CBA-established or CBA-defined terms of employment do not make for a CBA dispute if

there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment."  Id.

## III. The Pilot Plaintiffs' Failure-To-Accommodate Claims Pursuant to Title VII of the Civil Rights Act of 1964 and the Americans With Disabilities Act of 1990

Count I and Count III of the Third Amended Complaint allege two different types of failure-to-accommodate claims.

Nine of the Pilot Plaintiffs bring Count I pursuant to Title VII, alleging that the Hawaiian Defendants failed to accommodate their religious beliefs when Defendants denied their requests for exemption from the vaccination policy.

The tenth Pilot Plaintiff, Philip Rother, brings Count III pursuant to the ADA, alleging the Hawaiian Defendants failed to accommodate his disability when they denied his request for exemption from the vaccination policy.

The Hawaiian Defendants argue that this Court lacks jurisdiction to review the Pilot Plaintiffs' claims in both Count I and Count III because the claims require the trier-of-fact to interpret and analyze disputed terms in the Pilot Plaintiffs' applicable Collective Bargaining Agreement.

### A.    Reasonable Accommodations Under Title VII Of The Civil Rights Act of 1964

To establish a failure-to-accommodate religion claim, a plaintiff must prove that (1) he had a bona fide religious belief, the practice of which conflicted with an employment duty;

19

(2) he informed his employer of the belief and conflict; and (3) the employer subjected him to an adverse employment action because of his inability to fulfill the job requirement. Peterson v. Hewlett-Packard Co., 358 F.3d 599, 606 (9th Cir. 2004); Tiano v. Dillard Dep't Stores, Inc., 139 F.3d 679, 681 (9th Cir. 1998).

### B.    Undue Hardship Under Title VII Of The Civil Rights Act of 1964

An employer may put forth an undue hardship defense by establishing that it could not reasonably accommodate the employee without undue hardship.  Peterson, 358 F.3d at 607-08.

The United States Supreme Court ruled in Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 67 (1977), that it was an undue hardship to force an employer to violate an existing collective bargaining agreement in order to provide an employee with his requested accommodation pursuant to Title VII of the Civil Rights Act of 1964.  See Groff v. DeJoy, 600 U.S. 447, 470 (2023) (clarifying that undue hardship under Title VII requires more than de minimis cost).

The Title VII undue hardship analysis must take into account all relevant factors, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer.  Id. at 471.  There is undue hardship on an employer "where a variance from a bona fide seniority system is necessary in order to accommodate an

20

employee's religious practices when doing so would deny another employee his or her job or shift preference guaranteed by that system." 29 C.F.R. § 1605.2(e)(2).

In the context of the vaccine mandates during the COVID-19 pandemic, the Ninth Circuit Court of Appeals explained in Petersen v. Snohomish Reg'l Fire & Rescue, 150 F.4th 1211, 1220 (9th Cir. 2025), that the undue hardship analysis requires examination of: (1) health and safety costs, (2) operational burdens, and (3) financial burdens on the employer. The undue hardship analysis specifically requires consideration of potential operational disruption caused by accommodations to large numbers of employees seeking accommodations at the same time. Id.

The Ninth Circuit Court of Appeals recently held in Williams v. Legacy Health, 174 F.4th 1201, 1205-06 (9th Cir. 2026) that the costs and burdens examined in an undue hardship analysis need not have been actually experienced by the employer in order for the undue hardship defense to apply. A risk of undue hardship is sufficient for the defense to apply so long as the risk is realistic. Id. (citing Petersen, 150 F.4th at 1222 and E.E.O.C. v. Townley Eng'g & Mfg. Co., 859 F.2d 610, 615 (9th Cir. 1988)).

## C.  Reasonable Accommodations Under The ADA

The evaluation of a failure-to-accommodate claim under Title VII is very similar to the evaluation of such a claim under the

21

Americans With Disabilities Act of 1990.  Combs v. PeaceHealth, 2026 WL 745102, *19 (D. Or. Mar. 17, 2026).

To establish a failure-to-accommodate claim under the ADA, the plaintiff must establish that he is disabled, that he is a qualified individual who can perform the essential functions of the job with or without a reasonable accommodation, and that he suffered an adverse employment action because of his disability. Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012) (citing 42 U.S.C. § 12112(a), (b)(5)(A)).

### D.    Undue Hardship Under The ADA

Similar to undue hardship under Title VII, an employer may establish an undue hardship defense under the ADA by demonstrating that the accommodation "would impose an undue hardship on the operation of the business" or that the plaintiff would "pose a direct threat to the health or safety of other individuals in the workplace."  42 U.S.C. §§ 12112(b)(5)(A), 12113(b); see Echazabal v. Chevron USA, Inc., 336 F.3d 1023, 1028 (9th Cir. 2003).

### IV.  Interpretation Of Various CBA Terms Is Required To Evaluate The Pilot Plaintiffs' Title VII And ADA Failure-To-Accommodate Claims

The Hawaiian Defendants assert that the Pilot Plaintiffs' failure-to-accommodate claims are precluded from review under the RLA because resolution of the claims requires analysis and

22

interpretation of several disputed terms in the applicable Collective Bargaining Agreement.

The Parties dispute what accommodations were available to the Pilot Plaintiffs based on their differing interpretations of several terms in the CBA.  The Parties also disagree about whether there was a realistic risk of undue hardship if the Hawaiian Defendants provided the Pilot Plaintiffs with their requested accommodations.

**A.    The Unprecedented Nature Of The COVID-19 Pandemic Placed Many Terms Of The Collective Bargaining Agreement At Issue**

There can be no dispute that the COVID-19 pandemic altered the commercial aviation business and deeply impacted the airline industry between 2019 and 2021.  There were numerous local, state, and international laws and regulations governing travel, masking, testing, and social distancing during the pandemic. Employers faced many challenges with respect to the shifting COVID-19 landscape.

The Hawaiian Defendants explained that the COVID-19 pandemic significantly impacted their international routes.  Chief Operations Officer Jonathan Snook stated that "[i]n 2021, various foreign governments imposed COVID-19 related restrictions on international travel, including but not limited to international flight crew quarantining.  These restrictions were not static throughout 2021.  Given the unpredictability of the pandemic

(with the Delta and Omicron surges in 2021), Hawaiian spent considerable time and effort tracking these international restrictions, which changed periodically."  (Snook Decl. at ¶ 3, attached to Def.'s Reply, ECF No. 150-4).  Chief Operations Officer Snook explained that it was difficult to make operational decisions given the continuing legal changes during the pandemic, but that decisions were made "while keeping the safety and health of Hawaiian employees as the paramount concern."  (Id. at ¶ 4).

The Hawaiian Defendants implemented their COVID-19 vaccine mandate in August 2021.  Each of the Pilot Plaintiffs requested exemption from the mandate, which Defendants denied.  The Pilot Plaintiffs have brought failure-to-accommodate claims against the Hawaiian Defendants, arguing that they should have been allowed to be exempt from the Defendants' vaccination policy.

Application and interpretation of the Pilot Plaintiffs' Collective Bargaining Agreement is necessary to resolve the failure-to-accommodate claims and the undue hardship defense. Analysis and interpretation of the CBA are required because the failure-to-accommodate claims require: (1) an evaluation of the availability of accommodations to the pilots based on the applicable CBA's terms; (2) a determination of the impact their proposed accommodations would have on other pilots' rights under the CBA; and (3) an assessment of the risk of undue hardship to the Hawaiian Defendants.

Justin Doane, the Hawaiian Defendants' Vice President of

Labor Relations, points to numerous provisions of the CBA that
require interpretation in order to evaluate the availability of
certain accommodations and the potential undue hardship to the
Hawaiian Defendants during the pandemic, specifically:

| CBA Provision Topic: | CBA Provision Number and Text |
| --- | --- |
| Seniority | 18.A Seniority as a Pilot shall be based upon the length of service as a Pilot with the Company.... Seniority shall govern all pilots in case of...their selection of vacancies and runs, and all other rights, privileges and opportunities accorded to pilots under this Agreement. |
| Filling of Vacancies | 20.A.3 All vacancies shall ... be filled by status, equipment and domicile in accordance with this Section and Section 18 (Seniority) |
| Preparation, Bidding & Awarding of Runs | 21.C.1 Each pilot shall, in seniority, be awarded his or her preferences for the month. |
| Open Trip Scheduling List (OTSL) | 22.G.3 Pilots on the OTSL are assigned or awarded a flight grouping(s) as follows ... h. ... to recalled bid line pilots ("junior [m]anning") in reverse order of seniority who are legal to accept the award but must be removed from a flight grouping(s) or reserve day to ensure all contractual and FAR legality (200% pay per Paragraph H of this Section and Section 4.N) |

(Doane Decl. at ¶ 11, ECF No. 104-2).

The evaluation of what accommodations "could be feasible
would necessarily entail interpreting... seniority, filling of
vacancies, bidding, and awarding of runs provisions of the CBA."[4]

---

[4] (Doane Decl. at ¶ 22, attached to Def.'s Motion, ECF No.
104-2; see CBA Section 2, Definitions; Section 3, Compensation;
Section 18, Seniority; Section 20, Filling of Vacancies; Section

The Hawaiian Defendants explain that they received an unprecedented number of employee accommodation requests: 497 requests for religious accommodations and 72 requests for medical accommodations.  (Jackson Decl. at ¶ 3, attached to Def.'s Reply, ECF No. 150-2).  "Hawaiian management discussed potential accommodations to the Vaccine Policy, and management had to consider COVID-19 restrictions affecting international flights when deciding whether potential accommodations were viable for flight crew."  (Id. at ¶ 4).

The Hawaiian Defendants assert that they considered allowing pilots to "bid around" certain destinations as a potential accommodation, but they determined that interpretation of the CBA was required.  (Doane Decl. at ¶¶ 5-6, attached to Def.'s Reply, ECF No. 150-3).

The Parties' disputes about the CBA and the availability of reasonable accommodations and the undue hardship defense during the pandemic are exactly the types of disputes that the Court lacks subject-matter jurisdiction to review.

> **B.    The Parties Dispute Whether The CBA's Terms Permitted Accommodations For Travel And Scheduling Of Crew To Some Foreign Jurisdictions**

The Hawaiian Defendants argue that crew assignments became particularly difficult in 2021 when the governments of Australia,

---

21, Preparation, Bidding & Awarding of Runs; Section 22, Scheduling Policy, attached as Ex. 1 to Def.'s Motion, ECF No. 104-9).

American Samoa, French Polynesia, and Japan implemented numerous restrictions for unvaccinated crew and travelers in their jurisdictions.[5]

At the time of the vaccine mandate, the Pilot Plaintiffs flew on the Defendants' Airbus 330 aircraft and flew on the international routes at issue and/or were on reserve for such routes.  (Beard Decl. at ¶¶ 3-5, attached to Def.'s Motion, ECF No. 104-3).

The Hawaiian Defendants assert that:

> determining whether adjusting pilot schedules to accommodate unvaccinated pilots by not scheduling them for international flights to locations with restrictions on unvaccinated pilots would require an interpretation of the CBA to determine whether the CBA grants seniority rights to pilots with regard to specific destinations and whether, and to what extent, more senior pilots' bidding preferences would be impacted by accommodating unvaccinated pilots to not fly to those international locations during the pandemic.

(Doane Decl. at ¶ 23, ECF No. 104-2).

The interpretation of various CBA terms, including its seniority provisions, process bidding for routes, and scheduling of pilots, is necessary to evaluate the availability of

---

[5] (See Public Health (COVID-19 Air Transportation Quarantine) Order (No 4) 2021, issued by the New South Wales Government, attached as Ex. 2 Def.'s Motion, ECF No. 104-10; Hawaiian Airlines Alert 20-12 re: American Samoa, dated September 10, 2021, attached as Ex. 4 to Def.'s Motion, ECF No. 104-12; Hawaiian Airlines Alert 20-11 re: French Polynesia, dated August 2, 2021, attached as Ex. 5 to Def.'s Motion, ECF No. 104-13; Health Alert - U.S. Embassy Tokyo by U.S. Mission Japan, dated September 29, 2021, attached as Ex. 6 to Def.'s Motion, ECF No. 104-14).

accommodations for the Pilot Plaintiffs.  This is particularly true because the Pilot Plaintiffs operated the A330 aircraft. Piloting a specific aircraft impacted the pilots' hourly rate of pay pursuant to the terms of the CBA.  Any alteration as to the aircraft flown by the Pilot Plaintiffs would impact not only their own rights under the CBA but the CBA rights of other pilots.  (See CBA Section 3, Compensation, at §3-4, ECF No. 104-9).

Piloting an Airbus 330 aircraft also determined the routes flown and other terms of employment because not all aircraft were flown on all routes.  (CBA Section 2, Definitions at § 2FF—II, Section 20, Filling of Vacancies at §20A—J, ECF No. 104-9; Snook Decl. at ¶ 4, ECF No. 104-8).  The types of routes flown also dictated other employment terms.  For example, expenses were paid at a higher rate for "International Flying." (See CBA Section 5, Expenses at §5-1, ¶A.1.b.ECF No. 104-9).  Piloting an Airbus 330 aircraft also provided priority for filling of vacancies pursuant to the CBA.  (See CBA Section 20, Vacancies at §20-1, ¶A.3, ECF No. 104-9).

The issues raised by the Pilot Plaintiffs' failure-to-accommodate claims require analysis and interpretation of the CBA terms.  The Court finds that the CBA has provisions that must be interpreted in order to resolve Plaintiffs' claims.  The Parties dispute the application and meaning of terms in the CBA and dispute what accommodations were available to the pilots based on

their interpretations of the CBA.

**C.    The Pilot Plaintiffs' Proposed Accommodations Require
          Interpretation Of The CBA**

The Plaintiff Pilots argue that no interpretation of the CBA
is even necessary because they argue that they should have been
allowed to continue to fly to foreign locations despite any laws
and restrictions in place.  The Court disagrees.  Application and
interpretation of the CBA is necessary to resolve Plaintiffs'
failure-to-accommodate claims.

Alternatively, the Pilot Plaintiffs claim that, even if the
CBA is required to resolve their claims, the CBA permitted the
accommodations they requested.  This position by Plaintiffs
demonstrates that they are relying on their own interpretation of
the terms of the CBA to argue that granting their accommodation
requests and their schedule preferences would not have violated
the CBA terms.

The Plaintiff Pilots misunderstand the RLA analysis.  The
question, for purposes of the RLA, is whether a provision of the
CBA could "arguably" dispose of a claim or defense.  <u>Schurke</u>, 898
F.3d at 924.  The analysis is not whether the terms of the CBA
would actually permit an accommodation or cause undue hardship.
Instead, it is whether the trier of fact needs to resolve
disagreements about CBA terms that govern the pilots' failure to
accommodate claims as well as the Defendants' undue hardship
defense.

The Parties' conflict is about the interpretation, scope, and applicability of numerous terms in the CBA.  These are the exact types of disputes that are subject to preclusion pursuant to the RLA.  <u>Hinant</u>, 2024 WL 4988391, at *3; <u>Pritchard v. American Airlines, Inc.</u>, 708 F.Supp.3d 861, 867 (N.D. Tex. 2023)).

### D.    The Undue Hardship Defense Requires Interpretation Of The CBA

The Hawaiian Defendants' position is that they faced undue hardship either if they permitted the Pilot Plaintiffs to continue to travel on international routes during the pandemic or if they provided accommodations to the Plaintiff Pilots by reassignment because it would impact other pilots' CBA rights.

The Pilot Plaintiffs' position is that they could have traveled to Australia, American Samoa, French Polynesia, and Japan without vaccination because the limitations posed by the foreign restrictions were never experienced by the Hawaiian Defendants.

The Pilot Plaintiffs misunderstand how the undue hardship analysis affects preclusion under the RLA.

The analysis of undue hardship includes not only the operational burdens suffered by the employer but also the realistic risk of additional harm and disruption.

The Ninth Circuit Court of Appeals recently held in <u>Williams v. Legacy Health</u>, 174 F.4th 1201, 1205-07 (9th Cir. 2026) that

30

the costs and burdens examined in an undue hardship analysis need not have been actually experienced by the employer in order for the undue hardship defense to apply.  Undue hardship applies so long as the risk is realistic.  Id. (citing Petersen, 150 F.4th at 1222 and E.E.O.C. v. Townley Eng'g & Mfg. Co., 859 F.2d 610, 615 (9th Cir. 1988)).

Interpretation and analysis of the CBA is required to evaluate the undue hardship defense in this case.  Specifically, interpretation of the CBA is required to determine if the Pilot Plaintiffs' proposed accommodations would have affected the rights of other pilots subject to the same agreement, including risks to the Defendants' operations and the health and safety of other employees.  Williams, 174 F.4th at 1205-07.

The Hawaiian Defendants' position is that "[s]imply permitting up to 71 unvaccinated pilots and 268 unvaccinated flight attendants to fly to Australia, American Samoa, French Polynesia, and Japan during the pendency of the Vaccine Policy was not a viable option."  (Snook Decl. at ¶ 5, ECF No. 150-4).  The Hawaiian Defendants' position is that the Pilot Plaintiffs' requests to continue to fly to foreign destinations while unvaccinated was not possible because the proposed accommodation did not contemplate the inevitable mechanical issues, weather events, medical events, diversions, and flight delays.  (Id. at ¶ 7).

The CBA terms are implicated and require interpretation with

31

respect to Plaintiffs' proposed accommodation.  Plaintiffs ignore the reality that Chief Operations Officer Snook points out: "[i]n the event of any operational irregularity, unvaccinated flight crew would have been subject to the COVID-19 restrictions of those destinations and Hawaiian would have been forced to fly in replacement crew."  (Id.)

Plaintiffs' position fails to take into account the numerous terms of the CBA that must be evaluated in assessing undue hardship, including (1) health and safety costs, (2) operational burdens, and (3) financial burdens on the employer.  Petersen, 150 F.4th at 1220.

The unique circumstances of the COVID-19 pandemic make analysis and interpretation of the CBA particularly necessary. The Pilot Plaintiffs' failure-to-accommodate claims are "inextricably intertwined" with the complex Collective Bargaining Agreement and various provisions governing scheduling, bidding, training, and seniority for pilots.  Edelman v. W. Airlines, Inc., 892 F.2d 839, 845 (9th Cir. 1989).

The questions regarding disputed terms of the CBA, the availability of reasonable accommodations, and the undue hardship defense are the exact types of disputes that the Court lacks subject-matter jurisdiction to review.  Hardison, 432 U.S. at 79; 29 C.F.R. § 1605.2(e)(2); 42 U.S.C. §§ 12111(10), 12112(b)(5)(A), 12113(b).

**E.    The Decision In <u>Odell v. Kalitta Air, LLC</u>, 107 F.4th 523, 532 (6th Cir. 2024) Supports Preclusion Under The RLA**

The Hawaiian Defendants rely on the decision by the Sixth Circuit Court of Appeals in <u>Odell v. Kalitta Air, LLC</u>, 107 F.4th 523, 532 (6th Cir. 2024).  The facts in <u>Odell</u> are nearly identical to the case here.

In <u>Odell</u>, the Sixth Circuit Court of Appeals ruled that a group of pilots' failure-to-accommodate claims were precluded from court review pursuant to the RLA because the claims necessarily implicated interpretation of the CBA's terms regarding the pilots' scheduling and seniority.

In <u>Odell</u>, the plaintiff pilots elected not to vaccinate for COVID-19 and requested exemptions from their employer air carrier's mandatory vaccine requirement imposed during the global pandemic.  <u>Id.</u> at 531.  The plaintiff pilots proposed an accommodation of limiting their flying routes to countries that did not impose vaccine requirements.  <u>Id.</u>  The employer denied their requests for exemption and accommodations.  <u>Id.</u>

The pilots sued their air carrier employer, asserting various claims including Title VII and ADA claims for failure-to-accommodate the unvaccinated pilots based on their religious beliefs and their alleged disabilities.

The district court ruled that the pilot's failure-to-accommodate claims were precluded from court review pursuant to the RLA.  <u>Id.</u>

33

On appeal, the Sixth Circuit Court of Appeals affirmed. Id. at 531-32. The Appellate Court ruled that the plaintiffs' failure-to-accommodate claims required interpretation of the existing collective bargaining agreement, specifically with respect to seniority, bidding, and scheduling of the pilots' routes. Id. The Sixth Circuit Court of Appeals ruled that the courts lacked subject-matter jurisdiction over the pilots' failure-to-accommodate claims and that such claims were precluded from review pursuant to the RLA. Id. at 531-32.

Here, the facts are nearly identical. The Pilot Plaintiffs requested that the Hawaiian Defendants allow them to fly unvaccinated and/or to fly only on specified routes. Just as in Odell, the Pilot Plaintiffs' requested accommodations require interpretation of the terms of the CBA regarding seniority, bidding, and scheduling of the pilots' routes.

The Pilot Plaintiffs' attempts to distinguish this case from Odell are not persuasive. As explained in the lower court decision, when a potential accommodation could interfere with a seniority scheme set forth in a CBA, it is necessary to interpret the applicable CBA because the agreement itself both creates and defines the scope of the employees' seniority rights. Odell v. Kalitta Air, LLC, 678 F.Supp.3d 904, 918 (E.D. Mich. 2023).

Other Federal District Courts have ruled that similar failure-to-accommodate claims against transportation carriers in the context of the COVID-19 pandemic are precluded from court

34

review.   Several Federal District Courts have found that plaintiffs' failure-to-accommodate claims implicate analysis and interpretation of CBA provisions for transportation workers regarding scheduling, bidding, routes, and compensation. Whitford v. Nat'l R.R. Passenger Corp., 2024 WL 4216050, at *6 (W.D.N.Y. Sept. 17, 2024); Grindling v. Cathay Pacific Airways, Ltd., 2024 WL 4164234, at *3 (N.D. Ill. Sept. 11, 2024); DesOrmeaux v. Kalitta Air, LLC, 2025 WL 2245123, *7-*8 (E.D. Mich. Aug. 6, 2025); see also Stanley v. ExpressJet Airlines, Inc., 808 Fed. Appx. 351, 356 (6th Cir. 2020).

Such claims require interpretation of collective bargaining agreements for which the courts lack subject-matter jurisdiction. See Wickstrom v. Air Line Pilots Assoc., Int'l, 156 F.4th 835, 842-43 (7th Cir. 2025) (finding the pilots' union did not err in declining to file a lawsuit against United Airlines for its COVID-19 vaccine mandate because it presented a minor dispute within the meaning of the RLA over which the courts lack jurisdiction).

The Court agrees with the reasoning in Odell, 107 F.4th at 532, Whitford, 2024 WL 4216050, at *6, Grindling, 2024 WL 4164234, at *3, and DesOrmeaux, 2025 WL 2245123, at *7-*8.

The Pilot Plaintiffs' failure-to-accommodate claims in Counts I and III of the Third Amended Complaint are precluded from court review pursuant to the RLA.

<u>CONCLUSION</u>

The Hawaiian Defendants' Motion for Partial Dismissal for Lack of Subject-Matter Jurisdiction as to Pilot Plaintiffs Michael Anderson, Heidi Cala, Chacy R. Eveland III, David Fischer, Geoffrey Hanson, Jon Katahara, Aaron Nelson, Philip Rother, Michael Ryan, and Alvin Reinauer (ECF No. 104) is **GRANTED.**

**Count I** for Failure-to-Accommodate Religious Beliefs as stated in the Third Amended Complaint (ECF No. 95) for Plaintiffs Michael Anderson, Heidi Cala, Chacy R. Eveland III, David Fischer, Geoffrey Hanson, Jon Katahara, Aaron Nelson, Michael Ryan, and Alvin Reinauer is **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction.

**Count III** for Failure-to-Accommodate Disability as stated in the Third Amended Complaint (ECF No. 95) for Plaintiff Philip Rother is **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction.

IT IS SO ORDERED.

DATED: June 30, 2026, Honolulu, Hawaii

Helen Gillmor
United States District Judge

Aaron Nelson et. al., v. Hawaiian Airlines, Inc., et al.; Civil No. 23-00603 HG-WRP; **ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION AS TO CERTAIN PILOTS (ECF No. 104)**

36