IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

AARON NELSON; ABIGAEL ROANN B. )   CIV. NO. 23-00603 HG-WRP
RANADA; ADRIANNE VAKAUTA;      )
ALICIA OKUMURA; ALISSA PACARRO )
TUUMALO; ALVIN REINAUER; AMANDA)
LOPEZ; ANDREW DIAGO; ANDREW    )
WOLCOTT; ANGELA IRIS REICH;    )
ARIELLE CASSADY; ASHLYNNE      )
QUINSAAT; BARBARA JEAN VIDINHA )
RICHARDS; BRENT BARGAMENTO;    )
BRIAHNI' MARIE ATISANOE;       )
BRIDGET TULLY; BRIDGETT        )
ZINCHUK; BRITTANY K. REGO-     )
RODRIGUES; BROOKS FUJIHARA,JR.;)
BRYAN DAGUIO; CANDACE KRISTINE )
VIZCARRA (GUTIERREZ); CARLA    )
ESTIAMBA; CAROL LAMSE; CHACY R.)
EVELAND III; CHAD MAKAIAU;     )
CHARELLE BEDFORD; CHELSEA MIHM;)
CHELSEA TEHANE WILLIAMS;       )
CHRISTINA OLIVE; CHRISTINE     )
GOTO; CHRISTMASEDNA STARKS     )
(TUIFAGU); CHRISTOPHER BARBOZA;)
CHRISTOPHER KAM; CINDY BURT;   )
COLLEEN GOTO; DANIELLE OLVERA; )
DARIN K. MATSUNO; DAVID        )
FISCHER; DAVID KURIHARA;       )
DEBORAH STALCUP; DEREK         )
ICHIYAMA; DIANE VENTIMIGLIA;   )
DINA ANGELES; DOMINIQUE        )
RANDAZZO; DORI YAMADA; DOROTHY )
TAPPY-HIGA; ELISA THURMAN-BEY; )
ELIZA KAHAWAII; ELIZABETH      )
BACHRAN; ELIZABETH CHAPTON;    )
ELIZABETH STOUDT; ERIK BARTON; )
FELISHALYN MILLER; GEOFFREY    )
HANSON; GERALD W. SAN CLEMENTE;)
HEATHER LAFI; HEIDI CALA; HELEN)
Y. SALVANI; JACQUELINE ANN     )
LOVIN-YAP; JAMES CABODOL, JR.; )
JAMES EVERTS; JANICE KIM; JASON)
AKINA; JEFFREY P. ARANYOS; JENA)
ZARRO; JODI YOKOYAMA; JODY     )
GOYA; JOHN PREGIL, JR.; JON    )
KATAHARA; JONATHAN OPIE; JOVAN )
LAFONTAINE; JOY GARY; KARLA L. )
DIAS WONG; KATHLEEN M. SWEET;  )

1

KAWAHINEHAAHEO KEOLANUI;           )
KE'ALAONALEHUA R. SOUZA;           )
KEHAUNANI MITSUKO KELIINOI         )
REIS; KEKAIKAHE'ELANI OLIVER;      )
KELLEE SMITH; KEOKI EDWIN K.       )
LIFTEE-KAU; KIANNA CHUN;           )
KIMBERLY TUZON; KRISTA ALVAREZ;    )
LANI PRIMACIO; LEIHAAHEO DIAS;     )
LEILANI M. SOON; LILINOE           )
KAHALEPAUOLE-BUSTAMANTE; LINDA     )
V. AU; LORI SEBASTIAN; LYLE        )
PURUGGANAN; MAILE HERNANDEZ;       )
MAILE M. HUSSEY; MARC              )
NISHIMURA; MARIANNE MATA; MEDA     )
J. WASHBURN TAKETA; MEGAN          )
SKWIERCZYNSKI; MEGUMI KEAN;        )
MEHANA SALVANI; MICHAEL            )
ANDERSON; MICHAEL RYAN; MICHELE    )
TANABE; MICHELLE NOLTIE;           )
MIKIALA AKAU; MISTY CARVER;        )
MITCHELLE CARINO; MONICA D.        )
SMITH; MORIAH GOSNEY; NALEISHA     )
LUCRISIA; NICOLE HENRY; NICOLE     )
WIEDEMANN; PATRICIA CASTRO;        )
PENELOPE GEBAUER; PHILLIP          )
ROTHER; PONO ROBACK; PULELEHUA     )
KNIGHT; RAELYNN BROAD-KELA;        )
RANETTE BAUTISTA; RONIN BURKE;     )
SARAH PARKER; SATCHADANANDA        )
SLADE; SCOTT FONG, JR.; SETEMA     )
SAGAPOLUTELE; SHANNON JACKSON;     )
SIONA TEJADA; STEPHEN              )
DANGERFIELD; TATIANA JOHNSON;      )
TAUARII NAHALEA-MARAMA; TERRI      )
MEDEIROS; TERRY YAMADA GILLEN;     )
THECLA TAYLOR; THEODORA AUWAE;     )
TORI DAGUIO; TRACI MILLER-         )
TRUONG; TRACIE RYAN; TRACY         )
SNOOPS; TRAVIS SMITH; UTUMOE       )
PADILLA; WAINANI YOUNG; WINNIE     )
MENDIOLA; ZARINA KAMA,             )
                 Plaintiffs,       )
                                   )
          vs.                      )
                                   )
HAWAIIAN AIRLINES, INC.;           )
HAWAIIAN HOLDINGS, INC.,           )
                                   )
                 Defendants.       )
_____ )

2

**ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION AS TO CERTAIN FLIGHT ATTENDANTS (ECF No. 105)**

Ninety-six of the Plaintiffs named in the Third Amended Complaint ("Flight Attendant Plaintiffs")[1] were employed as flight attendants by Defendant Hawaiian Airlines, Inc. prior to the COVID-19 global pandemic.

Each of the 96 Flight Attendant Plaintiffs either served as bid flight attendants or reserve flight attendants from July 2021 to December 2021.

_____

[1] The 96 Flight Attendant Plaintiffs in the Third Amended Complaint are: Dina Angeles, Alissa Tuumalo, Linda V. Au, Diane Ventimiglia, Thecla Taylor, Brent Bargamento, Stephen Dangerfield, Erik Barton, Alicia Okumura, Theodora Auwae, Keoki Edwin K. Liftee-Kau, Carla Estiamba, Christopher Barboza, Ke'alaonalehua Rebecca Souza, Pulelehua Knight, Tori Nicole Silva Daguio, Nicole Henry, Derek Ichiyama, Lilinoe Kahalepauole-Bustamante, Christopher Kam, Karla Leinaala Dias Wong, Terri Medeiros, Kathleen M. Sweet, Mikiala Akau, Leilani M. Soon, Darin K. Matsuno, Megumi Kean, Jacqueline Ann Lovin-Yap, Christina Olive, Kawahineha'aheo Keolanui, Carol Lamse, Amanda Lopez, Candace Kristine Vizcarra, Kekaikaheelani Oliver, Tauarii Nahalea-Marama, Traci Miller-Truong, Felishalyn Miller, Joy Gary, Dorothy Tappy-Higa, Shannon Jackson, Barbara JV Richards, Tatiana Johnson, Danielle Olvera, Elisa Thurman-Bey, Leihaaheo Dias, Mehana Salvani, Janice Kim, Siona Tejada, Christmasedna Starks, Penelope Gebauer, Kehaunani Reis, Michele Tanabe, Sarah Parker, Helen Salvani, Cindy Burt, Bridgett Zinchuk, Elizabeth Bachran, Nicole Wiedemann, Patricia Castro, John Pregil, Chad Makaiau, Tracie Ryan, Maile M. Hussey, Raelynn Broad-Kela, Maile Hernandez, Michelle Noltie, Monica Smith, Winnie Mendiola, Christine Goto, Charelle Bedford, Jovan LaFontaine, Satchadananda Slade, Heather Lafi, Arielle Cassady, Elizabeth Miyono Chapton, Kianna Chung, Kimberly Tuzon, Chelsea Mihm, Bridget Lokelani Tully, Dori Yamada, Krista Alvarez, Tracy Snoops, Briahni' Marie Atisanoe, Naleisha Lucrisia, Setema Sagapolutele, Chelsea Tehane Williams, Megan Skwierczynski, Kellee Smith, Terry Yamada Gillen, Bryan Daguio, Misty Carver, Dominique Randazzo, Adrianne Vakauta, Colleen Goto, Moriah Gosney, and Elizabeth Stoudt.

In August 2021, Defendants Hawaiian Airlines, Inc. and Hawaiian Holdings, Inc. ("Hawaiian Defendants") implemented a mandatory vaccination policy for COVID-19.

The 96 Flight Attendant Plaintiffs requested to be exempt from the Hawaiian Defendants' COVID-19 vaccination policy based on religious and/or medical grounds.  The Hawaiian Defendants denied the Flight Attendant Plaintiffs' requests for exemption from the vaccination policy.

The 96 Flight Attendant Plaintiffs, along with 44 other employees, have filed suit against the Hawaiian Defendants.

The Third Amended Complaint contains various claims against the Hawaiian Defendants.  At issue in this Motion are Count I for failure-to-accommodate religious beliefs pursuant to Title VII of the Civil Rights Act of 1964 and Count III for failure-to-accommodate disability pursuant to the Americans With Disabilities Act of 1990.

Eighty-three of the Flight Attendant Plaintiffs[2] bring

---

[2] The 83 Flight Attendant Plaintiffs asserting Title VII failure-to-accommodate claims are: Dina Angeles, Alissa Tuumalo, Linda V. Au, Diane Ventimiglia, Thecla Taylor, Brent Bargamento, Stephen Dangerfield, Erik Barton, Alicia Okumura, Theodora Auwae, Keoki Edwin K. Liftee-Kau, Carla Estiamba, Christopher Barboza, Pulelehua Knight, Nicole Henry, Derek Ichiyama, Lilinoe Kahalepauole-Bustamante, Christopher Kam, Karla Leinaala Dias Wong, Terri Medeiros, Kathleen M. Sweet, Mikiala Akau, Leilani M. Soon, Darin K. Matsuno, Jacqueline Ann Lovin-Yap, Christina Olive, Kawahineha'aheo Keolanui, Amanda Lopez, Candace Kristine Vizcarra, Kekaikaheelani Oliver, Tauarii Nahalea-Marama, Traci Miller-Truong, Felishalyn Miller, Joy Gary, Dorothy Tappy-Higa, Shannon Jackson, Barbara JV Richards, Tatiana Johnson, Danielle Olvera, Elisa Thurman-Bey, Leihaaheo Dias, Mehana Salvani, Janice Kim, Siona Tejada, Penelope Gebauer, Kehaunani Reis, Michele

claims pursuant to Count I and argue that the Hawaiian Defendants failed to reasonably accommodate their religious beliefs in violation of Title VII of the Civil Rights Act of 1964.

One of the Flight Attendant Plaintiffs, Elizabeth Stoudt, brings a claim pursuant to Count III and argues that the Hawaiian Defendants failed to reasonably accommodate her disability in violation of the Americans With Disabilities Act of 1990.

Twelve of the Flight Attendant Plaintiffs[3] bring both Title VII and ADA failure-to-accommodate claims.

The Hawaiian Defendants assert that it would have caused undue hardship to accommodate the employees' requests for exemption from the vaccination policy.

The Hawaiian Defendants filed a Motion for Partial Dismissal based on lack of subject-matter jurisdiction as to the Flight Attendant Plaintiffs' failure-to-accommodate claims under both

_____

Tanabe, Sarah Parker, Helen Salvani, Bridgett Zinchuk, Patricia Castro, John Pregil, Chad Makaiau, Tracie Ryan, Maile M. Hussey, Raelynn Broad-Kela, Maile Hernandez, Michelle Noltie, Monica Smith, Christine Goto, Charelle Bedford, Jovan LaFontaine, Satchadananda Slade, Heather Lafi, Arielle Cassady, Elizabeth Miyono Chapton, Kianna Chung, Kimberly Tuzon, Chelsea Mihm, Bridget Lokelani Tully, Dori Yamada, Krista Alvarez, Briahni' Marie Atisanoe, Naleisha Lucrisia, Setema Sagapolutele, Megan Skwierczynski, Kellee Smith, Terry Yamada Gillen, Misty Carver, Dominique Randazzo, Adrianne Vakauta, Colleen Goto, and Moriah Gosney.

[3] The 12 Flight Attendant Plaintiffs asserting both Title VII and ADA failure-to-accommodate claims are: Ke'alaonalehua Rebecca Souza, Tori Nicole Silva Daguio, Megumi Kean, Carol Lamse, Christmasedna Starks, Cindy Burt, Elizabeth Bachran, Nicole Wiedemann, Winnie Mendiola, Tracy Snoops, Chelsea Tehane Williams, and Bryan Daguio.

Title VII and the ADA.  The Hawaiian Defendants assert that the 96 Flight Attendant Plaintiffs' failure-to-accommodate claims require interpretation of the Collective Bargaining Agreement that was in effect at the time the flight attendants sought exemption from the vaccination policy.

The Court may not review the Flight Attendant Plaintiffs' claims due to the jurisdictional limitations set forth in the Railway Labor Act, 45 U.S.C. §§ 181-188 ("RLA").  The RLA requires claims that involve interpretation of collective bargaining agreements for transportation workers to be resolved only through the RLA's internal dispute-resolution processes. See 45 U.S.C. § 184.

Defendants' Motion for Partial Dismissal for Lack of Subject-Matter Jurisdiction as to Certain Flight Attendants (ECF No. 105) is **GRANTED.**

## <u>PROCEDURAL HISTORY</u>

On December 15, 2023, 162 separate Plaintiffs filed a Complaint.  (ECF No. 1).

On April 3, 2024, Plaintiffs filed a First Amended Complaint.  (ECF No. 23).

On July 19, 2024, the Hawaiian Airlines Defendants filed a Motion to Partially Dismiss First Amended Complaint.  (ECF No. 44).

On October 25, 2024, the Court issued an ORDER GRANTING

DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND.  (ECF No. 52).

On December 16, 2024, Plaintiffs filed the Second Amended Complaint.  (ECF No. 64).

On September 23, 2025, the Court approved the Parties' JOINT STIPULATION OF DISMISSAL AS TO CRYSTAL K.E. ALLEN, URSULA BARTON, TRACY BEAN, JOHN P.K. BOURGEOIS, JOSEPH CASSADY, KELLIE LUKE, CYNDI R. MAYO-AKEO, MILA PALENCIA, KORY PUTT, JOY SATELE, AYUMI SIEVERTS, JENNIFER SHIMATSU, NANETTE SILVA, SHANA M. STALCUP, KANANI TABURA, DWAYNE TUZON, WILLIAM K. YOKOYAMA, KELLY YOUNG. (ECF No. 91).  Eighteen Plaintiffs were dismissed pursuant to the Joint Stipulation leaving 144 remaining Plaintiffs.  (Id.)

On September 25, 2025, the Court approved the Parties' Joint Stipulation Regarding Third Amended Complaint.  (ECF No. 93).

On September 26, 2025, the 144 remaining Plaintiffs filed the THIRD AMENDED COMPLAINT.  (ECF No. 95).

On October 10, 2025, Defendants filed the Motion for Partial Dismissal for Lack of Jurisdiction as to Certain Flight Attendants.  (ECF No. 105).

On March 20, 2026, Plaintiffs filed their Opposition to the Motion for Partial Dismissal as to Certain Flight Attendants. (ECF No. 147).

On April 2, 2026, Defendants filed their Reply to the Motion for Partial Dismissal as to Certain Flight Attendants.  (ECF No. 151).

On May 20, 2026, the Court granted the Parties' JOINT STIPULATION OF DISMISSAL AS TO PLAINTIFFS SEAN K. RODRIGUES, MERRIBETH IONA, DEAN M. SATO, AND JOSIAH BURBAGE.  (ECF No. 241).

The Court elects to decide Defendant's Motion for Partial Dismissal as to Certain Flight Attendants without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

## BACKGROUND

The 96 Flight Attendant Plaintiffs named in the Third Amended Complaint were employed as flight attendants by Defendant Hawaiian Airlines, Inc. at the time of the implementation of the vaccination policy in 2021.  (Declaration of Colin Beard, Director Crew Planning for Hawaiian Airlines, Inc., at ¶ 4, ECF No. 105-3).

## The Flight Attendant Plaintiffs' Collective Bargaining Agreement

At the time of the COVID-19 pandemic, the Flight Attendant Plaintiffs were subject to a Collective Bargaining Agreement entitled:

> "Agreement Between Hawaiian Airlines, Inc. and the
> Flight Attendants in the Service of Hawaiian Airlines,
> Inc. as Represented by the Association of Flight
> Attendants-CWA."

(Declaration of Justin Doane, Vice President of Labor Relations for Hawaiian Airlines, Inc., ("Doane Decl.") at ¶ 5, ECF No. 105-2; CBA attached as Ex. 1 to Def.'s Motion, ECF No. 105-9).

The Flight Attendant Plaintiffs were each union members of

The Association of Flight Attendants-CWA.  (Doane Decl. at ¶¶ 4-6, ECF No. 105-2).

The Collective Bargaining Agreement is commonly referred to as the "CBA."  The CBA at issue in this case for the Flight Attendant Plaintiffs was in effect from April 3, 2020 through April 2, 2025.  (CBA attached as Ex. 1 to Def.'s Motion, ECF No. 105-9).

The Collective Bargaining Agreement governed the working relationship between flight attendants, including each of the 96 Flight Attendant Plaintiffs, and the Hawaiian Defendants.  (Doane Decl. at ¶ 8, ECF No. 105-2).  The CBA sets forth the terms and conditions of the flight attendants' employment.  (Id.)  The CBA provides detailed rules governing the performance of flight attendant duties including scheduling, route assignments, seniority, benefits, and retirement.  (Id. at ¶ 11).

Flight attendants' schedules are determined through a seniority-based bidding system created by numerous CBA provisions.  (Id.)  The CBA requires flight attendants to be awarded their flight assignments in accordance with their seniority.  (Id.)

Pursuant to the terms of the CBA, flight attendants are classified as either "bid" or "reserve."  (Id. at ¶ 15).  Each bid flight attendant requests or "bids" for a monthly grouping of flight segments or routes they prefer to fly, known as a bid schedule.  (Id. at ¶ 12).  Reserve flight attendants are not

assigned a specific route or segments for the month.  (Id. at ¶ 15).  Instead, reserve flight attendants request possible reserve assignments they would prefer for the next month, including whether the flight attendant requests to be called first or last from the reserve pool.  (Id. at ¶¶ 12, 15-16)

For both bid and reserve flight attendants, the most senior flight attendant is awarded their first choice and the next most senior flight attendant receives their preference based on what is remaining and so on.  (Id. at ¶ 13).

Flight attendants may also be recalled on their days off or if a shortage of flight attendants exists.  (Id. at ¶ 17).

The seniority and bidding provisions of the CBA cover all Hawaiian flight attendants' work assignment routes, schedules (including locations, dates, duration, and layovers), and aircraft types.  (Id. at ¶ 9; CBA at Section 8 on "Reserves," Section 9 on "Seniority," Section 10 on "Preparation, Bidding and Awarding of Flight Schedules Under PBS," and Section 11 on "Scheduling Policy," attached as Ex. 1 to Def.'s Motion, ECF No. 105-9).

Seniority and bidding procedures also affect work conditions, tasks, pay rates, and compensation.  (CBA at Section 3 on "Compensation," and Section 7 on "Hours of Service," attached as Ex. 1 to Def.'s Motion, ECF No. 105-9).

The Collective Bargaining Agreement contains a provision mandating that any disputes concerning interpretation or

application of any of the terms of the CBA be resolved through arbitration by the System Board of Adjustment whose decision is final and binding on the parties as provided by the Railway Labor Act, 45 U.S.C. § 151 et seq.  (CBA at 1-15, attached as Ex. 1 to Def.'s Motion, ECF No. 105-9; Doane Decl. at ¶¶ 7, 18, ECF No. 105-2).

**The Hawaiian Defendants' Vaccination Policy**

According to the Third Amended Complaint, on August 9, 2021, in the midst of the worldwide COVID-19 pandemic, the Hawaiian Defendants announced a vaccination policy.  (Third Amended Complaint at ¶ 37, ECF No. 95).  Plaintiffs allege that the Hawaiian Defendants required all of their U.S.-based employees to receive a COVID-19 vaccine or receive approval for exemptions based on religious or medical reasons.  (Id. at ¶ 48).

The Third Amended Complaint asserts that on September 17, 2021, the Hawaiian Defendants published the vaccination policy and required proof of vaccination by January 30, 2022.  (Id. at ¶ 39).

The Hawaiian Defendants' employees were permitted to submit requests for accommodations to the vaccination policy based on their religious beliefs or disabilities.  (Declaration of Robin Kobayashi, Senior Vice President of Human Resources at Defendant Hawaiian Airlines, Inc., ("Kobayashi Decl.") at ¶ 4, attached to Def.'s Motion, ECF No. 105-7).

11

A total of 268 unvaccinated flight attendants submitted accommodation requests to Defendants' vaccination policy. (Declaration of Willard Jackson, Senior Director of Leave Management for Defendant Hawaiian Airlines, Inc. ("Jackson Decl.") at ¶ 4, attached to Def.'s Motion, ECF No. 105-4).

Each of the 96 Flight Attendant Plaintiffs flew for the Hawaiian Defendants during July 2021 through December 2021. (Beard Decl. at ¶ 4, attached to Def.'s Motion, ECF No. 105-3). Each of the 96 Flight Attendant Plaintiffs either: (1) bid for and was awarded flights as a bid flight attendant or (2) bid for the reserve pool and was awarded reserve status. (Id. at ¶ 5).

According to the Third Amended Complaint, each of the 96 Flight Attendant Plaintiffs submitted requests for accommodations from the vaccine mandate, which were denied by the Hawaiian Defendants. (Third Amended Complaint at ¶¶ 17-24, 126, 128-31, 133-34, 137-44, 146, 148-49, 151, 158, 160-64, 166-70, 172-175, 177, 179, 181, 183, 185-87, 189-90, 192-93, 195-97, 200-01, 203-04, 206-07, 209, 211, 215-16, 218-23, 225-26, 229-34, 237, 239-41, 244-48, 250-51, 253, 256, 258-60, ECF No. 95).

**The Flight Attendant Plaintiffs' Cause of Action**

On September 26, 2025, the 96 Flight Attendant Plaintiffs filed the Third Amended Complaint, along with 44 other remaining individual Plaintiffs, against the Hawaiian Defendants. (Third Amended Complaint, ECF No. 95).

12

The Third Amended Complaint contains the following causes of action:

**COUNT I:**      Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for **Religious Discrimination** Based On **Failure-To-Accommodate**

**COUNT II:**     Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for **Religious Discrimination** Based On **Disparate Treatment**

**COUNT III:**    Violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq., for **Disability Discrimination** Based On **Disparate Treatment** and **Failure-To-Accommodate**

**COUNT IV:**     Violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq., for **Disability Discrimination** Based On **Perceived Disability**

**The Hawaiian Defendants' Motion to Dismiss Pursuant To the Railway Labor Act**

The Hawaiian Defendants have filed a Motion for Partial Dismissal as to the Flight Attendant Plaintiffs' failure-to-accommodate claims in Count I and Count III of the Third Amended Complaint for lack of subject-matter jurisdiction.

The Hawaiian Defendants' Motion argues that the Court lacks subject-matter jurisdiction to review Flight Attendant Plaintiffs' failure-to-accommodate causes of action because such claims are precluded from court jurisdiction pursuant to the Railroad Labor Act, 45 U.S.C. § 151, et seq.

**STANDARD OF REVIEW**

A plaintiff has the burden of proving that subject-matter jurisdiction exists.  Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  The Court must dismiss any claims for which it lacks subject-matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1); Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 975 (9th Cir. 2012).

A challenge to the Court's subject-matter jurisdiction may be "facial or factual."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the party challenging jurisdiction argues that the allegations contained in a complaint are insufficient "on their face" to invoke federal jurisdiction.  Id.  A facial challenge therefore mirrors a traditional motion to dismiss analysis.  The Court must take all allegations contained in the pleading "to be true and draw all reasonable inferences in [its] favor."  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

In a factual attack, the party challenging jurisdiction argues that the facts in the case, notwithstanding the allegations in the Complaint, divest the Court of subject-matter jurisdiction.  See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  No presumptive truthfulness attaches to the Complaint's allegations.  Id.  The party challenging jurisdiction presents "affidavits or other evidence properly brought before the court"

14

indicating that subject-matter jurisdiction is lacking.  Savage

v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir.

2003).  The burden then shifts to "the party opposing the motion

[to] furnish affidavits or other evidence to satisfy its burden

of establishing subject matter jurisdiction." Id.  Failure to

present suitable evidence establishing subject-matter

jurisdiction necessitates dismissal.  Moore v. Maricopa Cnty.

Sheriff's Office, 657 F.3d 890, 895 (9th Cir. 2011).

A motion challenging the district court's jurisdiction

pursuant to the Railway Labor Act is properly considered as a

motion bringing a factual attack on subject-matter jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(1).  Soper v. United Airlines,

Inc., 2024 WL 4800082, *2 (C.D. Cal. Sept. 4, 2024).

The Court may review the Collective Bargaining Agreement and

other relevant evidence to determine whether it has subject-

matter jurisdiction pursuant to the Railway Labor Act.  Hinant v.

American Airlines, Inc., 2024 WL 4988391, *3 (D. Ariz. Dec. 5,

2024).

**ANALYSIS**

## I.    The Railway Labor Act

The Railway Labor Act ("RLA"), 45 U.S.C. § 151, et seq., was

enacted to provide a comprehensive framework for resolving labor

disputes involving transportation carriers.

In 1936, the Railway Labor Act was extended to cover the

15

airline industry.  <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246, 248 (1994); <u>see</u> 45 U.S.C. § 181.

The RLA addresses three kinds of labor disputes:

(1)  major disputes;

(2)  minor disputes; and

(3)  representation disputes.

<u>Haralson v. United Airlines, Inc.</u>, 224 F.Supp.3d 928, 934 (N.D. Cal. 2016).

<u>First</u>, "major disputes" relate to the formation of collective bargaining agreements or the efforts of the parties to secure rights under the collective bargaining process.  <u>Consol. Rail Corp. v. Ry. Labor Executives' Ass'n</u>, 491 U.S. 299, 302 (1989).  Major disputes look to the acquisition of rights for the future, and they do not involve disputes about rights that were already secured in existing contracts.  <u>Id.</u>  Major disputes require the parties to undergo lengthy bargaining, mediation, and arbitration processes.  <u>Id.</u>

<u>Second</u>, "minor disputes" seek to enforce existing contractual rights as embodied in an existing collective bargaining agreement.  <u>Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters</u>, 779 F.3d 1069, 1081 (9th Cir. 2015) (en banc). Minor disputes require the existence of a collective bargaining agreement already in effect and involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation."  <u>Elgin, J. & E. Ry. Co. v. Burley</u>,

325 U.S. 711, 723 (1945).

The RLA mandates that minor disputes are subject to an exclusive dispute resolution mechanism for the prompt and orderly settlement of such claims.  Norris, 512 U.S. at 252.

A distinguishing feature of a minor dispute from a major dispute is that a minor dispute requires interpretation of an existing collective bargaining agreement whereas a major dispute challenges an attempt to form or secure collective bargaining rights.  Id. at 265.  Courts lack subject-matter jurisdiction to adjudicate minor disputes concerning an existing collective bargaining agreement.  Id.

Third, the RLA also covers "representation disputes" which concern the definition of a particular bargaining unit and selection of the employee representative for collective bargaining.  Herrera v. Command Sec. Corp., 837 F.3d 979, 989 (9th Cir. 2016).  Representation disputes are within the exclusive jurisdiction of the National Mediation Board and courts also lack jurisdiction over such claims.  Id.

## II.  Courts Lack Subject-Matter Jurisdiction To Review Minor Disputes Pursuant To The Railway Labor Act

Minor disputes about the contractual rights set forth in an existing collective bargaining agreement between an employee and a transportation carrier must be resolved through the RLA's non-judicial, procedural mechanisms rather than through a lawsuit. See 45 U.S.C. § 184.  Courts lack subject-matter jurisdiction

over minor disputes within the meaning of the RLA.  <u>Norris</u>, 512

U.S. at 253.

> **A.    There Is A Two-Step Test To Discern If A Dispute Over A Collective Bargaining Agreement Is Precluded From Court Jurisdiction**

Courts in the Ninth Circuit apply a two-step test to evaluate if a plaintiff's claim is preempted or precluded from court review by the RLA.  <u>Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union</u>, 23 F.4th 836, 841-42 (9th Cir. 2022).

<u>First</u>, the court examines if the plaintiff's claim seeks purely to vindicate a right or duty created by the collective bargaining agreement itself.  <u>Id.</u> at 843.  If so, the claim is preempted or precluded from review.  If not, the court proceeds to the second step.

<u>Second</u>, even when the claim does not seek to vindicate a right created by the CBA, the court must evaluate if the plaintiff's claim is substantially dependant on analysis and interpretation of the CBA.  <u>Id.</u>  If the claim does require analysis and interpretation of the CBA, the claim is preempted or precluded from review.

> **B.    Claims That Require Interpretation Of An Existing Collective Bargaining Agreement Are Precluded From Court Review Under The RLA**

Under step two, a court is without subject-matter

jurisdiction to review a plaintiff's claim that concerns interpretation of the "duties and rights created or defined by the collective bargaining agreement." Alaska Airlines, Inc. v. Schurke, 898 F.3d 904, 919 (9th Cir. 2018) (en banc) (quoting Norris, 512 U.S. at 258).  Such disputes must be resolved only through the RLA mechanisms, and not by a court.  Id.

The RLA exclusivity provision was enacted to ensure that disputes regarding existing collective bargaining agreements are governed by a uniform set of principles rather than conflicting substantive interpretations under competing legal systems in the federal and state courts.  Schurke, 898 F.3d at 919.

**C.    Disputes That Do Not Require Interpretation Of the Existing Collective Bargaining Agreement Are Not Preempted Or Precluded From Court Review**

Consultation of the collective bargaining agreement alone is insufficient to trigger application of the RLA.  Livadas v. Bradshaw, 512 U.S. 107, 124 (1994).  In order to qualify as a minor dispute pursuant to the RLA, the dispute must require interpretation of the terms of a collective bargaining agreement. Norris, 512 U.S. at 265.

The court is not divested of jurisdiction pursuant to the RLA if there is no disagreement as to the meaning of all of the terms of the collective bargaining agreement.  Schurke, 898 F.3d at 927.  "Reliance on and reference to CBA-established or CBA-defined terms of employment do not make for a CBA dispute if

19

there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment."  <u>Id.</u>

## III. <u>The Flight Attendant Plaintiffs' Failure-To-Accommodate Claims Pursuant to Title VII of the Civil Rights Act of 1964 and the Americans With Disabilities Act of 1990</u>

Count I and Count III of the Third Amended Complaint allege two different types of failure-to-accommodate claims.

Eighty-three of the Flight Attendant Plaintiffs bring claims pursuant to Count I and argue that the Hawaiian Defendants failed to reasonably accommodate their religious beliefs in violation of Title VII of the Civil Rights Act of 1964.

One of the Flight Attendant Plaintiffs, Elizabeth Stoudt, brings a claim pursuant to Count III and argues that the Hawaiian Defendants failed to reasonably accommodate her disability in violation of the Americans With Disabilities Act of 1990.

Twelve of the Flight Attendant Plaintiffs bring both Title VII and ADA failure-to-accommodate claims.

The Hawaiian Defendants argue that this Court lacks jurisdiction to review the Flight Attendant Plaintiffs' claims in both Count I and Count III because the claims require the trier-of-fact to interpret and analyze disputed terms in the Flight Attendant Plaintiffs' applicable Collective Bargaining Agreement.

### A.    **Reasonable Accommodations Under Title VII Of The Civil Rights Act of 1964**

To establish a failure-to-accommodate religion claim, a

20

plaintiff must prove that (1) he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer subjected him to an adverse employment action because of his inability to fulfill the job requirement. Peterson v. Hewlett-Packard Co., 358 F.3d 599, 606 (9th Cir. 2004); Tiano v. Dillard Dep't Stores, Inc., 139 F.3d 679, 681 (9th Cir. 1998).

**B.    Undue Hardship Under Title VII Of The Civil Rights Act of 1964**

An employer may put forth an undue hardship defense by establishing that it could not reasonably accommodate the employee without undue hardship. Peterson, 358 F.3d at 607-08.

The United States Supreme Court ruled in Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 67 (1977), that it was an undue hardship to force an employer to violate an existing collective bargaining agreement in order to provide an employee with his requested accommodation pursuant to Title VII of the Civil Rights Act of 1964. See Groff v. DeJoy, 600 U.S. 447, 470 (2023) (clarifying that undue hardship under Title VII requires more than de minimis cost).

The Title VII undue hardship analysis must take into account all relevant factors, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer. Id. at 471. There is undue

21

hardship on an employer "where a variance from a bona fide seniority system is necessary in order to accommodate an employee's religious practices when doing so would deny another employee his or her job or shift preference guaranteed by that system."  29 C.F.R. § 1605.2(e)(2).

In the context of the vaccine mandates during the COVID-19 pandemic, the Ninth Circuit Court of Appeals explained in Petersen v. Snohomish Reg'l Fire & Rescue, 150 F.4th 1211, 1220 (9th Cir. 2025), that the undue hardship analysis requires examination of: (1) health and safety costs, (2) operational burdens, and (3) financial burdens on the employer.  The undue hardship analysis specifically requires consideration of potential operational disruption caused by accommodations to large numbers of employees seeking accommodations at the same time.  Id.

The Ninth Circuit Court of Appeals recently held in Williams v. Legacy Health, 174 F.4th 1201, 1205-06 (9th Cir. 2026) that the costs and burdens examined in an undue hardship analysis need not have been actually experienced by the employer in order for the undue hardship defense to apply.  A risk of undue hardship is sufficient for the defense to apply so long as the risk is realistic.  Id. (citing Petersen, 150 F.4th at 1222 and E.E.O.C. v. Townley Eng'g & Mfg. Co., 859 F.2d 610, 615 (9th Cir. 1988)).

22

## C.    Reasonable Accommodations Under The ADA

The evaluation of a failure-to-accommodate claim under Title VII is very similar to the evaluation of such a claim under the Americans With Disabilities Act of 1990.  Combs v. PeaceHealth, 2026 WL 745102, *19 (D. Or. Mar. 17, 2026).

To establish a failure-to-accommodate claim under the ADA, the plaintiff must establish that he is disabled, that he is a qualified individual who can perform the essential functions of the job with or without a reasonable accommodation, and that he suffered an adverse employment action because of his disability. Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012) (citing 42 U.S.C. § 12112(a), (b)(5)(A)).

## D.    Undue Hardship Under The ADA

Similar to undue hardship under Title VII, an employer may establish an undue hardship defense under the ADA by demonstrating that the accommodation "would impose an undue hardship on the operation of the business" or that the plaintiff would "pose a direct threat to the health or safety of other individuals in the workplace."  42 U.S.C. §§ 12112(b)(5)(A), 12113(b); see Echazabal v. Chevron USA, Inc., 336 F.3d 1023, 1028 (9th Cir. 2003).

## IV.    Interpretation Of Various CBA Terms Is Required To Evaluate The Flight Attendant Plaintiffs' Title VII And ADA Failure-To-Accommodate Claims

The Hawaiian Defendants assert that the Flight Attendant Plaintiffs' failure-to-accommodate claims are precluded from review under the RLA because resolution of the claims requires analysis and interpretation of several disputed terms in the applicable Collective Bargaining Agreement.

The Parties dispute what accommodations were available to the Flight Attendant Plaintiffs based on their differing interpretations of several terms in the CBA.  The Parties also disagree about whether there was a realistic risk of undue hardship if the Hawaiian Defendants provided the Flight Attendant Plaintiffs with their requested accommodations.

### A.    The Unprecedented Nature Of The COVID-19 Pandemic Placed Many Terms Of The Collective Bargaining Agreement At Issue

There can be no dispute that the COVID-19 pandemic altered the commercial aviation business and deeply impacted the airline industry between 2019 and 2021.  There were numerous local, state, and international laws and regulations governing travel, masking, testing, and social distancing during the pandemic. Employers faced many challenges with respect to the shifting COVID-19 landscape.

The Hawaiian Defendants explained that the COVID-19 pandemic significantly impacted their international routes.  Chief

24

Operations Officer Jonathan Snook stated that "[i]n 2021, various foreign governments imposed COVID-19 related restrictions on international travel, including but not limited to international flight crew quarantining.  These restrictions were not static throughout 2021.  Given the unpredictability of the pandemic (with the Delta and Omicron surges in 2021), Hawaiian spent considerable time and effort tracking these international restrictions, which changed periodically."  (Snook Decl. at ¶ 3, attached to Def.'s Reply, ECF No. 151-4).  Chief Operations Officer Snook explained that it was difficult to make operational decisions given the continuing legal changes during the pandemic, but that decisions were made "while keeping the safety and health of Hawaiian employees as the paramount concern."  (Id. at ¶ 4).

The Hawaiian Defendants implemented their COVID-19 vaccine mandate in August 2021.  Each of the Flight Attendant Plaintiffs requested exemption from the mandate, which Defendants denied. The Flight Attendant Plaintiffs have brought failure-to-accommodate claims against the Hawaiian Defendants, arguing that they should have been allowed to be exempt from the Defendants' vaccination policy.

Application and interpretation of the Flight Attendant Plaintiffs' Collective Bargaining Agreement is necessary to resolve the failure-to-accommodate claims and the undue hardship defense.  Analysis and interpretation of the CBA are required because the failure-to-accommodate claims require: (1) an

25

evaluation of the availability of accommodations to the flight attendants based on the applicable CBA's terms; (2) a determination of the impact their proposed accommodations would have on other flight attendants' rights under the CBA; and (3) an assessment of the risk of undue hardship to the Hawaiian Defendants.

Justin Doane, Defendants' Vice President of Labor Relations, points to numerous provisions of the CBA requiring interpretation in order to evaluate the availability of certain accommodations for flight attendants and the potential undue hardship to the Hawaiian Defendants during the pandemic, specifically:

| CBA Provision Topic: | CBA Provision Number and Text |
| --- | --- |
| Seniority | 9.B.3  Seniority shall govern all employees in case of bidding of runs... |
| Awarding of Schedules | 10.A.1  A Flight Attendant retains the right to fly any runs out of her/his domicile to which her/his seniority entitles her/him as a result of bidding.<br><br>10.A.2  Schedules shall be bid monthly and Flight Attendants shall be awarded their monthly run in accordance with their seniority. |
| Awarding and Assignment of Monthly Runs | 10.H.1  All monthly runs shall be awarded in accordance with seniority and bid preferences. |

| Assignment of Flights to Reserve Flight Attendants | 8.C.1 Reserve Flight Attendants will be assigned to open flying on a daily basis in order of seniority....  8.J.2 Reserves may submit the following preferences, in priority order, for groupings in Open Time by 1330 for groupings which report on the following calendar day....  8.N.7 Filling Uncovered Positions Remaining After Assignment Process in N.6 Above |
|---|---|
| Hours of Service/Recalling Flight Attendants <u>on</u> Days Off/Involuntary Recall | 7.I.b.  (1) If open grouping remain uncovered after the voluntary recall award, or the departure time is within three (3) hours, Crew Scheduling may involuntarily assign these trips in the following order.... |

(Doane Decl. at ¶ 11, ECF No. 105-2).

The evaluation of what accommodations "could be feasible would necessarily entail interpreting...seniority, scheduling, bidding, and assignments of flights to bid flight attendants provisions of the CBA."  (Doane Decl. at ¶ 22, attached to Def.'s Motion, ECF No. 105-2; <u>see</u> CBA Section 2, Definitions; Section 3, Compensation; Section 8, Reserves; Section 9, Seniority; Section 10, Preparation, Bidding & Awarding of Flight Schedules Under PBS; Section 11, Scheduling Policy, attached as Ex. 1 to Def.'s Motion, ECF No. 105-9).

The Hawaiian Defendants explain that they received an unprecedented number of employee accommodation requests: 497 requests for religious accommodations and 72 requests for medical accommodations.  (Jackson Decl. at ¶ 3, attached to Def.'s Reply, ECF No. 151-2).  "Hawaiian management discussed potential

accommodations to the Vaccine Policy, and management had to consider COVID-19 restrictions affecting international flights when deciding whether potential accommodations were viable for flight crew."  (Id. at ¶ 4).

The Parties' disputes about the CBA and the availability of reasonable accommodations and the undue hardship defense during the pandemic are exactly the types of disputes that the Court lacks subject-matter jurisdiction to review.

**B.    The Parties Dispute Whether The CBA's Terms Permitted Accommodations For Travel And Scheduling Of Crew To Some Foreign Jurisdictions**

The Hawaiian Defendants argue that complications in assignments arose on numerous international routes from Honolulu during the COVID-19 pandemic.  Defendants assert that they were aware that the governments of Australia, American Samoa, French Polynesia, and Japan implemented certain restrictions for unvaccinated travelers in their jurisdictions.[4]

The Hawaiian Defendants assert that:

Allowing large numbers of unvaccinated flight attendants to continue to fly during the pandemic would

---

[4] (See Public Health (COVID-19 Air Transportation Quarantine) Order (No 4) 2021, issued by the New South Wales Government, attached as Ex. 2 Def.'s Motion, ECF No. 105-10; Hawaiian Airlines Alert 20-12 re: American Samoa, dated September 10, 2021, attached as Ex. 4 to Def.'s Motion, ECF No. 105-12; Hawaiian Airlines Alert 20-11 re: French Polynesia, dated August 2, 2021, attached as Ex. 5 to Def.'s Motion, ECF No. 105-13; Health Alert - U.S. Embassy Tokyo by U.S. Mission Japan, dated September 29, 2021, attached as Ex. 6 to Def.'s Motion, ECF No. 105-14).

have affected the seniority-based bidding process. Granting such accommodations to up to 268 unvaccinated flight attendants would have effectively granted them a reprieve from having to fly to/from international locations with COVID-related restrictions....

Determining whether adjusting flight attendant schedules to accommodate unvaccinated flight attendants by not scheduling them for the Australia, Japan, American Samoa, and French Polynesia flights would require an interpretation of the CBA to determine whether the CBA grants seniority rights to flight attendants with regard to specific destinations and whether, and to what extent, more senior flight attendants' bidding preferences would be impacted by accommodating unvaccinated flight attendants to not fly to those international locations during the pandemic. The issue of whether Hawaiian had a right to take additional steps to ensure vaccinated flight attendants would be available for these flights would necessarily entail interpreting the above-referenced seniority, scheduling, bidding, and assignments of flights to flight attendants provisions in the CBA (both as to those who bid a schedule and those who bid and were awarded the reserve pool).

(Doane Decl. at ¶¶ 22, 26, ECF No. 105-2).

The actual and potential foreign restrictions created a complicated, shifting legal landscape during the COVID-19 pandemic and Defendants faced unpredictable operational concerns when scheduling flight attendants.  (COO of Hawaiian Airlines, Inc. Jon Snook Decl. at ¶¶ 5-8, ECF No. 105-8; see Doane Decl. at ¶¶ 19-24, ECF No. 105-2; see also Mainerd Decl. at ¶ 3, ECF No. 105-5; Thomas Decl. at ¶¶ 3, 5, 7, ECF No. 105-6).

The interpretation of various CBA terms, including its seniority provisions, process bidding for routes, and scheduling of flight attendants, is necessary to evaluate the availability of accommodations for the Flight Attendant Plaintiffs.

29

Each of the 96 Flight Attendant Plaintiffs flew for the Hawaiian Defendants from July 2021 through December 2021. (Beard Decl. at ¶ 4, attached to Def.'s Motion, ECF No. 105-3). Each of the 96 Flight Attendant Plaintiffs was either: (1) a "bid run flight attendant" who bid for and was awarded a monthly schedule of flights or (2) a "reserve flight attendant" who bid for the reserve pool and was awarded reserve status. (Id. at ¶ 5).

A bid run flight attendant means a flight attendant who, in accordance with seniority, is awarded a scheduled series of routes based on his or her requested preference. (CBA Section 2, Definitions at § B-C, ECF No. 105-9). "Bid Run" is a term used to refer to the monthly awarded schedule of flying for the flight attendant. (Id.) The specific bid run is composed of any combination of scheduled trips arranged in known daily groupings of trips by flight numbers, points of departure, intermediate stops and destination points, etc. (Id.)

A reserve flight attendant is a flight attendant who has not been awarded a Bid Run and is available to be assigned to flying on reserve or to be placed on various assigned duties. (CBA Section 2, Definitions at § 2.AB., ECF No. 105-9).

Assignment of flights to both a bid run and a reserve flight attendant is done in seniority order, taking into consideration flight attendant preferences, including whether the flight attendant requests to be called first or last from the reserve pool. (CBA Section 8, Reserves at §§ 8.C.1, 8.J.2, 8.N.7, ECF

No. 105-9; Doane Decl. at ¶¶ 11, 16, ECF No. 105-2).

The issues raised by the Flight Attendant Plaintiffs'
failure-to-accommodate claims require analysis and interpretation
of the CBA terms, specifically with respect to seniority.
Interpretation of the CBA is also required with respect to the
question regarding whether the Hawaiian Defendants could have
granted an accommodation to each of the 96 Flight Attendant
Plaintiffs or whether the Defendants would have been required to
provide the same accommodation to the other 172 unvaccinated
flight attendants who also requested exemption from the vaccine
policy.  (Jackson Decl. at ¶ 4, ECF No. 105-4).

The Court finds that the CBA has provisions that must be
interpreted in order to resolve Plaintiffs' claims.  The Parties
dispute the application and meaning of terms in the CBA and
disagree as to what accommodations were available to the flight
attendants based on their interpretations of the CBA.

C.    **The Flight Attendant Plaintiffs' Proposed
      Accommodations Require Interpretation Of The CBA**

The Flight Attendant Plaintiffs argue that no interpretation
of the CBA is even necessary because they argue that they should
have been allowed to continue to fly to foreign locations despite
any laws and restrictions in place.  The Court disagrees.
Application and interpretation of the CBA is necessary to resolve
Plaintiffs' failure-to-accommodate claims.

Alternatively, the Flight Attendant Plaintiffs claim that,

31

even if the CBA is required to resolve their claims, the CBA permitted the accommodations they requested.  This position by Plaintiffs demonstrates that they are relying on their own interpretation of the terms of the CBA to argue that granting their accommodation requests and schedule preferences would not have violated the CBA terms.

The Flight Attendant Plaintiffs misunderstand the RLA analysis.  The question, for purposes of the RLA, is whether a provision of the CBA could "arguably" dispose of a claim or defense.  <u>Schurke</u>, 898 F.3d at 924.  The analysis is not whether the terms of the CBA would actually permit an accommodation or cause undue hardship.  Instead, it is whether the trier of fact needs to resolve disagreements about CBA terms that govern the flight attendants' failure to accommodate claims as well as the Defendants' undue hardship defense.

The Parties' conflict is about the interpretation, scope, and applicability of numerous terms in the CBA.  These are the exact types of disputes that are subject to preclusion pursuant to the RLA.  <u>Hinant</u>, 2024 WL 4988391, at *3; <u>Pritchard v. American Airlines, Inc.</u>, 708 F.Supp.3d 861, 867 (N.D. Tex. 2023)).

**D.    The Undue Hardship Defense Requires Interpretation Of The CBA**

The Hawaiian Defendants' position is that they faced undue hardship if they permitted the Flight Attendant Plaintiffs to

32

continue to travel on international routes during the pandemic or if they provided accommodations to the Flight Attendant Plaintiffs by reassignment because it would impact other flight attendants' CBA rights

The Flight Attendant Plaintiffs' position is that they could have still traveled to Australia, American Samoa, French Polynesia, and Japan without vaccination because the limitations posed by the foreign restrictions were never experienced by the Hawaiian Defendants.

The Flight Attendant Plaintiffs misunderstand how the undue hardship analysis affects preclusion under the RLA.

The analysis of undue hardship includes not only the operational burdens suffered by the employer but also the realistic risk of additional harm and disruption.

The Ninth Circuit Court of Appeals recently held in Williams v. Legacy Health, 174 F.4th 1201, 1205-07 (9th Cir. 2026) that the costs and burdens examined in an undue hardship analysis need not have been actually experienced by the employer in order for the undue hardship defense to apply. Undue hardship applies so long as the risk is realistic. Id. (citing Petersen, 150 F.4th at 1222 and E.E.O.C. v. Townley Eng'g & Mfg. Co., 859 F.2d 610, 615 (9th Cir. 1988)).

Interpretation and analysis of the CBA is required to evaluate the undue hardship defense in this case. Specifically, interpretation of the CBA is required to determine if the Flight

Attendant Plaintiffs' proposed accommodations would have affected the rights of other flight attendants subject to the same agreement, including risks to the Defendants' operations and the health and safety of other employees.  Williams, 174 F.4th at 1205-07.

The Hawaiian Defendants' position is that "[s]imply permitting up to 71 unvaccinated pilots and 268 unvaccinated flight attendants to fly to Australia, American Samoa, French Polynesia, and Japan during the pendency of the Vaccine Policy was not a viable option."  (Snook Decl. at ¶ 5, ECF No. 151-4). The Hawaiian Defendants position is that the Flight Attendant Plaintiffs' requests to continue to fly to foreign destinations while unvaccinated was not possible because the proposed accommodation did not contemplate the inevitable mechanical issues, weather events, medical events, diversions, and flight delays.  (Id. at ¶ 7).

The CBA terms are implicated and require interpretation with respect to Plaintiffs' proposed accommodation.  Plaintiffs ignore the reality that Chief Operations Officer Snook points out: "[i]n the event of any operational irregularity, unvaccinated flight crew would have been subject to the COVID-19 restrictions of those destinations and Hawaiian would have been forced to fly in replacement crew."  (Id.)

Plaintiffs' position fails to take into account the numerous terms of the CBA that must be evaluated in assessing undue

34

hardship, including (1) health and safety costs, (2) operational burdens, and (3) financial burdens on the employer.  Petersen, 150 F.4th at 1220.

The unique circumstances of the COVID-19 pandemic make analysis and interpretation of the CBA particularly necessary. The Flight Attendant Plaintiffs' failure-to-accommodate claims are "inextricably intertwined" with the complex Collective Bargaining Agreement and various provisions governing scheduling, bidding, training, and seniority for pilots.  Edelman v. W. Airlines, Inc., 892 F.2d 839, 845 (9th Cir. 1989).

The questions regarding disputed terms of the CBA and the availability of reasonable accommodations and the undue hardship defense are the exact types of disputes that the Court lacks subject-matter jurisdiction to review.  Hardison, 432 U.S. at 79; 29 C.F.R. § 1605.2(e)(2); 42 U.S.C. §§ 12111(10), 12112(b)(5)(A), 12113(b).

**E.     The Decision In <u>Odell v. Kalitta Air, LLC</u>, 107 F.4th 523, 532 (6th Cir. 2024) Supports Preclusion Under The RLA**

The Hawaiian Defendants rely on the decision by the Sixth Circuit Court of Appeals in Odell v. Kalitta Air, LLC, 107 F.4th 523, 532 (6th Cir. 2024).  The facts in Odell are nearly identical to the case here.

In Odell, the Sixth Circuit Court of Appeals ruled that a group of pilots' failure-to-accommodate claims were precluded

35

from court review pursuant to the RLA because the claims necessarily implicated interpretation of the CBA's terms regarding the pilots' scheduling and seniority.

In Odell, the plaintiff pilots elected not to vaccinate for COVID-19 and requested exemptions from their employer air carrier's mandatory vaccine requirement imposed during the global pandemic. Id. at 531. The plaintiff pilots proposed an accommodation of limiting their flying routes to countries that did not impose vaccine requirements. Id. The employer denied their requests for exemption and accommodations. Id.

The pilots sued their air carrier employer, asserting various claims including Title VII and ADA claims for failure-to-accommodate the unvaccinated pilots based on their religious beliefs and their alleged disabilities.

The district court ruled that the pilot's failure-to-accommodate claims were precluded from court review pursuant to the RLA. Id.

On appeal, the Sixth Circuit Court of Appeals affirmed. Id. at 531-32. The Appellate Court ruled that the plaintiffs' failure-to-accommodate claims required interpretation of the existing collective bargaining agreement, specifically with respect to seniority, bidding, and scheduling of the pilots' routes. Id. The Sixth Circuit Court of Appeals ruled that the courts lacked subject-matter jurisdiction over the pilots' failure-to-accommodate claims and that such claims were precluded

36

from review pursuant to the RLA.  Id. at 531-32.

Here, the facts are very similar.  The Flight Attendant Plaintiffs requested that the Hawaiian Defendants allow them to fly unvaccinated and/or to fly only on specified routes.  Just as in Odell, the Flight Attendant Plaintiffs' requested accommodations require interpretation of the terms of the CBA regarding seniority, bidding, and scheduling of the flight attendants' routes.

The Flight Attendant Plaintiffs' attempts to distinguish this case from Odell are not persuasive.  As explained in the lower court decision, when a potential accommodation could interfere with a seniority scheme set forth in a CBA, it is necessary to interpret the applicable CBA because the agreement itself both creates and defines the scope of the employees' seniority rights.  Odell v. Kalitta Air, LLC, 678 F.Supp.3d 904, 918 (E.D. Mich. 2023).

Other Federal District Courts have ruled that similar failure-to-accommodate claims against transportation carriers in the context of the COVID-19 pandemic are precluded from court review.  Several Federal District Courts have found that plaintiffs' failure-to-accommodate claims implicate analysis and interpretation of CBA provisions for transportation workers regarding scheduling, bidding, routes, and compensation. Whitford v. Nat'l R.R. Passenger Corp., 2024 WL 4216050, at *6 (W.D.N.Y. Sept. 17, 2024); Grindling v. Cathay Pacific Airways,

37

Ltd., 2024 WL 4164234, at *3 (N.D. Ill. Sept. 11, 2024);

DesOrmeaux v. Kalitta Air, LLC, 2025 WL 2245123, *7-*8 (E.D.

Mich. Aug. 6, 2025); see also Stanley v. ExpressJet Airlines,

Inc., 808 Fed. Appx. 351, 356 (6th Cir. 2020).

Such claims require interpretation of collective bargaining

agreements for which the courts lack subject-matter jurisdiction.

 See Wickstrom v. Air Line Pilots Assoc., Int'l, 156 F.4th 835,

842-43 (7th Cir. 2025) (finding the pilots' union did not err in

declining to file a lawsuit against United Airlines for its

COVID-19 vaccine mandate because it presented a minor dispute

within the meaning of the RLA over which the courts lack

jurisdiction).

The Court agrees with the reasoning in Odell, 107 F.4th at

532, Whitford, 2024 WL 4216050, at *6, Grindling, 2024 WL

4164234, at *3, and DesOrmeaux, 2025 WL 2245123, at *7-*8.

The Flight Attendant Plaintiffs' failure-to-accommodate

claims in Counts I and III of the Third Amended Complaint are

precluded from court review pursuant to the RLA.

## CONCLUSION

Defendants' Motion for Partial Dismissal for Lack of

Subject-Matter Jurisdiction as to Certain Flight Attendants (ECF

No. 105) is **GRANTED.**

**Count I** for Failure-to-Accommodate Religious Beliefs as

stated in the Third Amended Complaint (ECF No. 95) for Plaintiffs

38

Dina Angeles, Alissa Tuumalo, Linda V. Au, Diane Ventimiglia, Thecla Taylor, Brent Bargamento, Stephen Dangerfield, Erik Barton, Alicia Okumura, Theodora Auwae, Keoki Edwin K. Liftee-Kau, Carla Estiamba, Christopher Barboza, Ke'alaonalehua Rebecca Souza, Pulelehua Knight, Tori Nicole Silva Daguio, Nicole Henry, Derek Ichiyama, Lilinoe Kahalepauole-Bustamante, Christopher Kam, Karla Leinaala Dias Wong, Terri Medeiros, Kathleen M. Sweet, Mikiala Akau, Leilani M. Soon, Darin K. Matsuno, Megumi Kean, Jacqueline Ann Lovin-Yap, Christina Olive, Kawahineha'aheo Keolanui, Carol Lamse, Amanda Lopez, Candace Kristine Vizcarra, Kekaikaheelani Oliver, Tauarii Nahalea-Marama, Traci Miller-Truong, Felishalyn Miller, Joy Gary, Dorothy Tappy-Higa, Shannon Jackson, Barbara JV Richards, Tatiana Johnson, Danielle Olvera, Elisa Thurman-Bey, Leihaaheo Dias, Mehana Salvani, Janice Kim, Siona Tejada, Christmasedna Starks, Penelope Gebauer, Kehaunani Reis, Michele Tanabe, Sarah Parker, Helen Salvani, Cindy Burt, Bridgett Zinchuk, Elizabeth Bachran, Nicole Wiedemann, Patricia Castro, John Pregil, Chad Makaiau, Tracie Ryan, Maile M. Hussey, Raelynn Broad-Kela, Maile Hernandez, Michelle Noltie, Monica Smith, Winnie Mendiola, Christine Goto, Charelle Bedford, Jovan LaFontaine, Satchadananda Slade, Heather Lafi, Arielle Cassady, Elizabeth Miyono Chapton, Kianna Chung, Kimberly Tuzon, Chelsea Mihm, Bridget Lokelani Tully, Dori Yamada, Krista Alvarez, Tracy Snoops, Briahni' Marie Atisanoe, Naleisha Lucrisia, Setema Sagapolutele, Chelsea Tehane

39

Williams, Megan Skwierczynski, Kellee Smith, Terry Yamada Gillen, Bryan Daguio, Misty Carver, Dominique Randazzo, Adrianne Vakauta, Colleen Goto, and Moriah Gosney is **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction.

**Count III** for Failure-to-Accommodate Disability as stated in the Third Amended Complaint (ECF No. 95) for Plaintiffs Elizabeth Stoudt, Ke'alaonalehua Rebecca Souza, Tori Nicole Silva Daguio, Megumi Kean, Carol Lamse, Christmasedna Starks, Cindy Burt, Elizabeth Bachran, Nicole Wiedemann, Winnie Mendiola, Tracy Snoops, Chelsea Tehane Williams, and Bryan Daguio is **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction.

IT IS SO ORDERED.

DATED: June 30, 2026, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Aaron Nelson et. al., v. Hawaiian Airlines, Inc., et al.; Civil No. 23-00603 HG-WRP; **ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION AS TO CERTAIN FLIGHT ATTENDANTS (ECF No. 105)**

40